RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
SPRINGSONG COOPER (CA Bar No. 307845)
(Email: scooper@hadsellstormer.com)
**HADSELL STORMER & RENICK, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYNDL BUZAS, RAUDEL COVARRUBIAS, and DANIEL RUNIONS, individually and on behalf of all similarly situated current and former employees,<br><br>                     Plaintiffs,<br><br>    v.<br><br>PHILLIPS 66 COMPANY and DOES 1 through 10, inclusive,<br><br>                  Defendants. | Case No. 4:17-cv-00163-YGR<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; DECLARATIONS OF COUNSEL; AND EXHIBITS**<br><br>DATE:    November 21, 2017<br>TIME:    10:00 a.m.<br>PLACE:  Oakland Courthouse, Courtroom 1 - 4th Floor<br><br>Honorable Yvonne Gonzalez Rogers |

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 21, 2017 at 10:00 a.m., in Courtroom 1 – Fourth Floor of the above-entitled court, located at 1301 Clay Street, Oakland, California, 94612, Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions, individually and on behalf of all similarly situated individuals, will and hereby do move this Court for entry of the proposed order filed concurrently herewith:

1. Preliminarily approving the class action settlement for $5,500,000;

2. Preliminarily and conditionally certifying the class for purposes of settlement;

3. Preliminarily appointing Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions as class representatives for purposes of settlement;

4. Preliminarily appointing Hadsell Stormer & Renick, LLP and Gilbert & Sackman, A Law Corporation, as class counsel for purposes of settlement;

5. Preliminarily approving the application for payment to class counsel of reasonable attorneys' fees of up to $1,375,000 (25% of the common fund) and reasonable costs up to $40,000;

6. Preliminarily approving the payment of an "incentive award" in the amount of $7,500 to each of the three class representatives;

7. Approving as to form and content the Proposed Notice of Class Action Settlement;

8. Directing that the Notice of Class Action Settlement be mailed to the Settlement Class members; and

9. Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the Settlement Class.

This motion is brought pursuant to Federal Rule of Civil Procedure 23 on the grounds that the Settlement is fair, reasonable, and adequate, and that all requirements for class certification have been met.

This motion is based upon this Notice, the Memorandum of Points and Authorities submitted

/ / /

herewith, the Declaration of Randy Renick and Joshua Young and exhibits, filed herewith, the other records, pleadings and papers filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing on this motion.

DATED:  November 7, 2017                    HADSELL STORMER & RENICK LLP

                                            GILBERT & SACKMAN
                                            A Law Corporation

                                            By: s/ Randy Renick

                                            By: s/ Joshua F. Young
                                            Attorneys for Plaintiffs Kyndl Buzas, Raudel
                                            Covarrubias, and Daniel Runions

## TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION ..........................................................................................1

II.    STATEMENT OF FACTS ..........................................................................2

    A.     Procedural Background..................................................................2

    B.     Pertinent Factual Background ......................................................2

        1.     Operators on 12-Hour Shifts Work on a Rotating Shift Schedule. .............2

        2.     DLSE Grants Phillips 66 an Exemption from Providing Off-Duty Rest Break Requirement ...............................3

    C.     The Parties .....................................................................................4

        1.     Class Representatives..............................................4

        2.     Defendants ..................................................................4

    D.     Discovery and Investigation Conducted by Plaintiffs ...................5

    E.     Summary of Settlement Terms and Anticipated Schedule........................5

        1.     Class Certification.....................................................5

        2.     Total Settlement Fund ...............................................5

        3.     Payment of Standard Claims....................................5

        4.     Additional Compensation for Active Litigants .................6

        5.     Attorney's Fees and Costs ........................................6

        6.     Payment of PAGA Claims.........................................6

        7.     Administration of Claims..........................................6

        8.     Notice to the Class ....................................................7

        9.     Proposed Schedule ...................................................8

III.   THE PROPOSED CLASS SETTLEMENT SATISFIES ALL OF THE REQUIREMENTS FOR PRELIMINARY APPROVAL........................................8

    A.     The Proposed Settlement Falls Within the Range of Possible Approval .................9

    B.     The Proposed Class Settlement is the Product of Serious, Informed, Non-Collusive, and Good-Faith Negotiations...............................11

C.    The Settlement Does Not Offer Preferential Treatment to the Class Representatives or Other Members of the Class......................................................11

D.    The Settlement Agreement Has No Obvious Deficiencies ....................................13

IV.    CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE .....................................14

A.    The Proposed Class is so Numerous that Joinder of All Members is Impracticable...........................................................................................................14

B.    There are Questions of Law and Fact Common to the Class................................15

C.    The Claims Alleged by the Named Plaintiffs are Typical of the Claims Which Could be Alleged by any Member of the Class ....................................................15

D.    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class......................................................................................................................15

E.    Common Questions of Law and Fact Predominate and a Class Action is Superior16

1.    Common Issues Predominate.................................................................16

2.    A Class Action is the Superior Method of Adjudication...........................17

V.    NOTICE TO CLASS OF FINAL APPROVAL HEARING ............................................17

A.    The Proposed Settlement Notice Contains All of the Required Components .......17

B.    The Method of Notice is Appropriate ................................................................18

VI.    CONCLUSION.............................................................................................................19

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Angell v. City of Oakland, No. 13-cv-00190 NC,*
5
   2015 U.S. Dist. LEXIS 1037 (N.D. Cal. Jan. 5, 2015) ............................................................9

6

*Augustus v. ABM Security Services, Inc.,*
   2 Cal. 5th 257 (2016) ....................................................................................................3, 4
7

*Bellinghausen v. Tractor Supply Co.,*
8
   306 F.R.D. 245 (N.D. Cal. Mar. 19, 2015) ..............................................................................12

9

*Benton v. Telecom Network Specialists, Inc.,*
   220 Cal. App. 4th 701 (2013) ..................................................................................................17
10

11

*Bradley v. Networkers Int'l, LLC,*
   211 Cal. App. 4th 1129 (2012) ................................................................................................16
12

13

*Brinker Restaurant Corp. v. Superior Court,*
   53 Cal.4th 1004 (2012) .............................................................................................................16

14

*Chu v. Wells Fargo Invs., LLC,*
15
   *Nos.* C 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821(N.D. Cal.
   Feb. 16, 2011) ..........................................................................................................................13

16

17

*Churchill Vill., L.L.C. v. GE,*
   361 F.3d 566 (9th Cir. 2004) ...............................................................................................8, 17

18

*Covillo v. Specialty's Café,*
19
   No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) .................12

20

*Craft v. City of San Bernardino,*
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................................................11

21

*Dennis v. Kellogg Co.,*
22
   697 F.3d 858 (9th Cir. 2012) ...................................................................................................13

23

*Dyer v. Wells Fargo Bank, N.A.,*
   303 F.R.D. 326 (N.D. Cal. 2014)............................................................................................11
24

25

*Edwards v. The First Am. Corp.,*
   798 F.3d 1172 (9th Cir. 2015) .................................................................................................16

26

*Ellis v. Costco Wholesale Corp.,*
27
   657 F.3d 970 (9th Cir. 2011) ...................................................................................................15

28

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) .................................................................................. *passim*

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .......................................................................................15

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ..............9, 12

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
   654 F.3d 935 (9th Cir. 2011) .......................................................................................10

*Kyndl Buzas, et al., v. Phillips 66 Co.*,
   Case No. 4:17-cv-00163-YGR . N.D. Cal. Case No. CV-14-00163, ECF No. 1 .....................2

*Lubin v. Wackenhut Corp.*,
   5 Cal. App. 5th 926, 957 (2016) ...................................................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................................16

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................10

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ...................................................................................9

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................................10

*In re Optical Disk Drive Prods. Antitrust Litig., No. 3:10-md-2143RS*,
   2016 U.S. Dist. LEXIS 175515 (N.D. Cal. Dec. 19, 2016) ..................................................8

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
   779 F.3d 934 (9th Cir. 2015) ..................................................................................10, 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................10, 12

*Sandoval v. Roadlink United States Pac., Inc.*,
   No. EDCV 10-00973 ..................................................................................................16

*Slaven v. BP America, Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ..................................................................................14

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ..................................................................................14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .....................................................................................11

**Federal Statute**

Fed. R. Civ. P. 23 .................................................................................... *passim*

**State Statute**

Cal. Labor Code § 226.7 ........................................................................3

**Wage Orders**

Industrial Welfare Commission (IWC) Wage Order No 1-2001, sub. 12(A) ....................... *passim*

Industrial Welfare Commission (IWC) Wage Order No. 4-2001 ................................................3, 4

**Other Authorities**

California Private Attorneys General Act ........................................................................2

Class Action Fairness Act (28 U.S.C. § 1715) ..............................................................14

PLTFFS' NOTICE OF AND MOT FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGRMNT; AND EXHS/Case No. 4:17-cv-00163-YGR

1

## I.   **INTRODUCTION**

2      Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions ("Plaintiffs") seek

3 preliminary approval of the proposed class action settlement ("Settlement") with Defendant Phillips 66

4 Company ("Phillips 66") of wage and hour claims brought on behalf of refinery Operators employed

5 by Phillips 66.  Attached as Exhibit 1 to the Declaration of Randy Renick filed concurrently herewith

6 is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release.

7      Plaintiffs further seek conditional certification for purposes of settlement of the following

8 class: all employees who have worked as Operators at Phillips 66's three refineries in Rodeo, Santa

9 Maria, and Los Angeles (including the Wilmington and Carson facilities), California, from January 12,

10 2013, to the date of Preliminary Approval.

11      Subject to final approval of this Court, the Parties have agreed to settle this action on an all-

12 cash, non-reversionary basis for $5,500,000.  Before settlement, Plaintiffs conducted extensive

13 investigation of Defendant's wage and hour practices at their three California refineries, particularly in

14 regard to the provision of rest breaks.  The investigation included interviews of Operators at each of

15 Defendant's California refineries, and the review of relevant written materials.  In addition, Defendant

16 provided, and Plaintiffs reviewed Phillips 66's payroll and timecard data which included the exact

17 number of shifts worked by class members during the class period and the specific pay rate which

18 applied to each of those shifts.  This discovery was sufficient to allow Plaintiffs to thoroughly evaluate

19 liability and determine damages so as to provide a sufficient basis upon which to obtain an outstanding

20 settlement within nine months of the filing of the Complaint.  The resolution was the result of arms-

21 length negotiations and two full day mediation session with David Rotman, a highly skilled and

22 experienced mediator.  Overall, the Settlement is an excellent result for the Settlement Class in light of

23 all the relevant circumstances.

24      Despite their best efforts, the Parties were unable to fully comply with the Court's order to file

25 a joint motion for preliminary approval.  However, Defendant has reviewed Plaintiffs' motion and has

26 agreed to file a notice of non-opposition.  Accordingly, Plaintiffs respectfully request that the Court

27 grant preliminary approval of the Settlement and enter the proposed order filed concurrently herewith.

28

## II.    STATEMENT OF FACTS

### A.    Procedural Background

On January 12, 2017, Plaintiffs filed their complaint against Defendant Phillips 66 Company ("Phillips 66") in the Northern District of California, captioned as *Kyndl Buzas, et al., v. Phillips 66 Co.*, Case No. 4:17-cv-00163-YGR ("the Lawsuit").  N.D. Cal. Case No. CV-14-00163, ECF No. 1.  The Lawsuit alleges the following causes of action: (1) Failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) the California Private Attorneys General Act; and (4) unfair competition.  Plaintiffs seek unpaid wages, statutory penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from January 12, 2013 to the present.  Declaration of Randy Renick ("Renick Decl.") at ¶3.

Prior to settlement, Plaintiffs conducted a complete investigation of Defendant's wage and hour practices with regard to rest breaks so as to evaluate liability and damages.  *Id.* at ¶ 9.  In addition, Plaintiffs reviewed extensive payroll and timecard data which allowed them to accurately determine the total amount of damages for which Defendant would be liable were Plaintiffs successful in their efforts to certify the class and prevail at trial.  *Id.* at ¶ 9.

On March 17, 2017, the Parties, including the three Named Plaintiffs, participated in mediation with David Rotman in San Francisco, California, but were unable to reach a settlement agreement that day and agreed to further mediation.  *Id.* at ¶ 5.  On May 12, 2017, Plaintiffs filed a First Amended Complaint.  *Id.* at ¶ 6. On June 20, 2017, the Parties participated in a second mediation with David Rotman and reached a settlement in the amount of $5,500,000.  *Id.* at ¶ 8.  The Settlement was ultimately reduced to a written settlement agreement and executed by all parties.  *Id.* at ¶ 8, Exh. "A."

### B.    Pertinent Factual Background

#### 1.    Operators on 12-Hour Shifts Work on a Rotating Shift Schedule.

Phillips 66 operates three refineries in California, one in Los Angeles (consisting of the Carson and Wilmington facilities), one in Santa Maria, and one in Rodeo.  Each refinery operates continuously, 24 hours a day, seven days a week.  The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences.  *Id.* at ¶¶ 11-12.

1    There are generally two types of Operators: Console (also known as "Board" or "Inside")

2    Operators and Field (or "Outside") Operators.  Console Operators sit at control boards, called

3    "consoles," inside a control facility and monitor and make adjustments to the levels, pressures,

4    temperatures, and other indicators on equipment, products, and processes in their units to ensure that

5    the units are operating properly.  Outside Operators work outside in the units and in satellite operating

6    shelters and they are responsible for maintaining, monitoring, inspecting, and making adjustments to

7    equipment at the direction of Console Operators and supervisors.  To keep the refineries operating

8    continuously, each unit has four crews of Operators who rotate between day and night shifts.  Every

9    crew on every shift must have certain minimum "crew positions" filled by an Operator at all times.  *Id*.

10    at ¶¶ 12-13.

11    Operators who work a 12-hour shift remain responsible for their units throughout their shifts.

12    Throughout their shifts, Phillips 66 requires Plaintiffs and the other operators to monitor the refining

13    process, respond to upsets and critical events, and maintain the safe and stable operation of their units.

14    In order to do so, Plaintiffs and the other operators are required to remain attentive, carry radios, and

15    be reachable at all times during their shifts.  Plaintiffs are also required to remain in contact with

16    supervisors and other employees working in their unit throughout their shifts.  As a result, Plaintiffs

17    never receive off-duty breaks because they are constantly and continuously responsible for their units.

18    *Id*. at ¶ 13.

19    ## 2.    DLSE Grants Phillips 66 an Exemption from Providing Off-Duty Rest Break Requirement

20    In *Augustus v. ABM Security Services, Inc.,* 2 Cal. 5th 257 (2016), the California Supreme

21    Court held that during rest periods taken pursuant to Labor Code section 226.7 and Industrial Welfare

22    Commission (IWC) wage order No. 4-2001, "employers must relieve employees of all duties and

23    relinquish control over how employees spend their time."  *Id*. at 269.  The Court further held that "an

24    employer cannot satisfy its obligations under Wage Order 4, subdivision 12(A) while requiring the

25    employees to remain on call."  *Id*. at 270.  Addressing the facts before it, the Court concluded that "[the

26    employer's] policy requiring plaintiffs to keep radios and pagers on, remain vigilant, and respond if the

27    need arose" was an example of a "broad and intrusive degree of control."  *Id*. at 270.  The Court

28

1    further concluded that policies, which "require[s] responsibilities substantially similar to plaintiffs'

2    ordinary job duties" during breaks, "conflict with an employer's obligation to provide breaks relieving

3    employees of all work-related duties and employer control." *Id.* at 271.

4         After the commencement of this lawsuit, Phillips 66 applied to the California Division of Labor

5    Standards Enforcement (DLSE) to seek a permanent exemption from Industrial Welfare Commission

6    (IWC) wage order No. 4-2001 sections 12(A) and 12(B) [rest periods] to allow all of its approximate

7    530 operators at its three California refineries to take "on-call" rest breaks with radios on.  On May 22,

8    2017, the DLSE granted Phillips 66 an exemption ("DLSE Exemption") from the California Supreme

9    Court's interpretation of rest breaks in *Augustus*, effective from May 22, 2017 through January 31,

10   2019.  Renick Decl. at ¶ 7.

11        **C.    The Parties**

12             **1.    Class Representatives**

13        Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions, the three Class

14   Representatives, are all currently employed by Defendant as operators at its California refineries as

15   non-exempt hourly employees.  Each of the three has worked for Defendant throughout the class

16   period.  Kyndl Buzas is currently employed as an Operator at the San Francisco refinery.  Raudel

17   Covarrubias is currently employed as a Head Operator at the Los Angeles refinery.  Daniel Runions is

18   currently employed as an Operator at the Santa Maria refinery.  Renick Decl. at ¶ 14.

19        Since January 12, 2013, Plaintiffs and the other operators have worked 12-hour shifts without

20   receiving off-duty rest periods because throughout their shifts Plaintiffs and the other operators are

21   required to monitor the refining process, respond to upsets and critical events, and maintain the safe

22   and stable operation of their units.  In order to do so, Plaintiffs are required to remain attentive, carry

23   radios, and be reachable at all times during their shifts.  *Id*. at ¶ 13.

24             **2.    Defendants**

25        Defendant Phillips 66 operates three oil refineries in California, one in Los Angeles (consisting

26   of the Carson and Wilmington facilities), one in Santa Maria, and one in Rodeo.  Renick Decl. at ¶ 10.

27

28

PLTFFS' NOTICE OF AND MOT FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGRMNT; AND EXHS/Case No. 4:17-cv-00163-YGR

### D.      Discovery and Investigation Conducted by Plaintiffs

Plaintiffs conducted extensive investigation of Defendant's wage and hour practices at their three California refineries, particularly in regard to the provision of rest breaks.  Plaintiffs interviewed operators at each of the refineries, and reviewed thousands of pages of relevant written materials, including employee handbooks, training materials and emergency protocol materials.  In addition, Defendant provided, and Plaintiffs reviewed Phillips 66's payroll and timecard data containing all of the shifts worked by class members during the class period and the specific pay rate which applied to each of those shifts.  Based on this extensive investigation and review of discovered materials, Plaintiffs were able to thoroughly evaluate liability and determine damages.  Plaintiffs' due diligence provided a sufficient basis upon which to obtain an outstanding settlement within nine months of the filing of the Complaint.  Renick Decl. at ¶ 9.

### E.      Summary of Settlement Terms and Anticipated Schedule

#### 1.      Class Certification

The settlement class stipulated to by the Parties for the purposes of settlement consists of the following: all employees who have worked as Operators at Phillips 66's three refineries in Rodeo, Santa Maria, and Los Angeles (including the Wilmington and Carson facilities), California, from January 12, 2013, to the date of Preliminary Approval.[1]  Renick Decl. at ¶ 15.

#### 2.      Total Settlement Fund

The total settlement amount is Five Million, Five Hundred Thousand Dollars ($5,500,000).  Defendant is also obligated to pay its share of payroll taxes, including FICA and FUDA.  The settlement is non-reversionary.  Uncashed settlement check(s), if any, will be awarded *cy pres* to Loyola Law School Legal Clinics.  Renick Decl., Exh. "1," at ¶ 21.

#### 3.      Payment of Standard Claims

The primary mechanism for Settlement involves cash payment to members of the settlement class according to the number of 12-hour shifts worked by each class member during the class period.  Renick Decl. at ¶ 19.

---

[1] This is the same class proposed in the First Amended Complaint.

5

### 4.    Additional Compensation for Active Litigants

In recognition of the risks and burdens undertaken by the Named Plaintiffs and those class members who actively participated in the litigation, mediation and settlement of this case, the Agreement provides additional compensation in an amount not to exceed $7,500 for each of the three named Plaintiffs. This payment shall be in addition to whatever portion of the settlement proceeds each such individual is otherwise entitled to receive.  The enhancements are intended to compensate these individuals fairly in relationship to the rest of the class in light of the additional burdens and risks they have undertaken by assisting in the prosecution of the lawsuit, including their participation in mediation sessions with David Rotman in San Francisco, and their active assistance with the litigation.  The Named Plaintiffs have also agreed to a general release of all claims they might have against Defendant, to provide declarations acknowledging the safety concerns associated with carrying radios during rest breaks, and not to oppose any future attempt by Defendants to obtain renewal of the DLSE rest break exemption.  Renick Decl., Exh. "1," at ¶ 25.

### 5.    Attorney's Fees and Costs

The settlement agreement provides for an award of reasonable attorney's fees and costs from the common fund.  Renick Decl. at ¶ 22.  Plaintiffs intend to seek an award of 25% of the total settlement fund ($1,375,000) in addition to litigation costs of approximately $40,000 and the costs of claims administration, estimated at $50,000.  *Id.* at ¶¶ 22-23.

### 6.    Payment of PAGA Claims

The total amount of the Settlement Fund allocated to PAGA penalties shall be fifty thousand dollars ($50,000), with seventy-five percent (75%) of the PAGA penalties ($37,500), being paid to the California Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) of the PAGA penalties ($12,500), being paid to Settlement Class Members who do not opt out.  Renick Decl., Exh. "1," at ¶ 37.

### 7.    Administration of Claims

The Parties have agreed to retain A.B. Data, ("A.B. Data" or "Administrator"), of Milwaukee, Wisconsin to act as the impartial claims administrator.  A.B. Data will be retained to calculate each class members share, determine the amount of payroll taxes owed by Defendant, send out notice to the

1   class members, maintain a website containing the key documents in the case, including the settlement

2   agreement, class notice and motion for attorney's fees, to resolve any challenges any party lodges to

3   all or part of a particular claim, and to mail the settlement checks to the authorized claimants.  A.B.

4   Data fees, estimated at $50,000, are to be paid out of the settlement fund.  Renick Decl., Exh. "1," ¶

5   24; 36.

6   ### 8.    Notice to the Class

7        The Settlement Agreement contemplates, among other things, that this Court will conditionally

8   certify a settlement class and grant preliminary approval of the settlement.  After preliminary approval

9   and class certification, the Settlement Agreement requires that the Notice of Class Action Settlement

10  ("the Notice") will be sent via first class mail to class members within 35 calendar days of preliminary

11  approval.  The Notice will inform potential class members of the terms of the Settlement Agreement,

12  their right to dispute the estimated settlement payment amount, their right to opt out of the class, their

13  right to object to the settlement, and their right to be heard at the final hearing on the fairness of the

14  settlement.  Renick Decl., Exh. "1," ¶ 62.  The Notice will provide the address for a website

15  maintained by the claims administrator that will have links to the Notice, motions for approval and for

16  attorneys' fees, and any other important documents in the case and instructions on how to access the

17  case docket via PACER or in person at the court.  *Id.* at ¶ 62(f).

18        Each member of the Class will be provided an individualized Notice form that will include the

19  number of shifts worked during the class period and the number of credits which form the basis for

20  determining each individual claimant's share of the settlement proceeds.  In addition, each Notice will

21  also include each class member's expected share of the settlement. *Id.* at ¶ 62(b).

22        The Notice advises each class member that they have three (3) options.  Those options are: (1)

23  do nothing and receive payment; (2) request exclusion in order to be excluded from the settlement; or

24  (3) object to the proposed settlement by filing a written objection and appearing at the Motion for

25  Final Approval.  *Id.* at ¶ 62(c).  Additionally, the Notice explains how to file a dispute regarding the

26  estimated settlement payment amount, the number of Qualifying Shifts, or the applicable credits.  *Id.*

27  at ¶ 62(d).

28        ///

### 9.    Proposed Schedule

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the Settlement.  This schedule is also stated in the proposed Order filed concurrently herewith.

| | |
|---|---|
| Tuesday, December 12, 2017. (21 Calendar days after Preliminary Approval): | Defendant to provide to the Claims Administrator a "class list" and the following information for each Class Member: (a) name; (b) last-known address; (c) e-mail address, if available; (d) social security number or employee identification number; (e) work site(s) where he or she was employed by Defendant during the Class Period; (f) number of Qualifying Shifts worked from January 12, 2013, to the date of Preliminary Approval; (g) number of Qualifying Shifts worked during each calendar year during the Class Period |
| Tuesday, December 26, 2017. (35 Calendar days after Preliminary Approval): | Class Notice mailed to all Class Members |
| Thursday, January 25, 2018. (15 days prior to Objection Deadline): | Plaintiffs' Motion for Attorney's Fees and Costs is Posted on Website |
| Friday, February 9, 2018. (45 calendar days after Class Notice is mailed): | Last day for class members to file written objections with the Court or to opt-out of the settlement |
| Tuesday, February 13, 2018: | Plaintiffs to file Motion for Final Approval |
| February 27, 2018, 2:00 p.m.: | Final Fairness and Motion for Fees and Costs Hearing |

### III.    THE PROPOSED CLASS SETTLEMENT SATISFIES ALL OF THE REQUIREMENTS FOR PRELIMINARY APPROVAL

"A presumption in favor of voluntary settlement agreements exists, and this presumption is especially strong in class actions and other complex cases . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *In re Optical Disk Drive Prods. Antitrust Litig., No. 3:10-md-2143 RS,* 2016 U.S. Dist. LEXIS 175515, at *43 (N.D. Cal. Dec. 19, 2016) (internal citation omitted); see also *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 576 (9th Cir. 2004) (Strong judicial policy favors class action settlements); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1988) (the court's role is to determine whether the

settlement terms fall within a reasonable range of possible settlements, with "proper deference to the private consensual decision of the parties" to reach an agreement rather than to continue litigating).

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. Approval is a two-step process under Rule 23(e), "the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Noll v. eBay, Inc.,* 309 F.R.D. 593, 602 (N.D. Cal. 2015) (internal citations omitted); *see also Hanlon,* 150 F.3d at 1027 (after preliminary approval and notice to the class, the Court reviews the fairness of the settlement at final approval); *Manual for Complex Litigation* (Fourth) § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing").

Courts in the Northern District of California have found preliminary approval of a settlement appropriate when the settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, non-collusive negotiations; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) has no obvious deficiencies. *Angell v. City of Oakland, No. 13-cv-00190 NC*, 2015 U.S. Dist. LEXIS 1037, at *21-22 (N.D. Cal. Jan. 5, 2015)(quoting *Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *23 (N.D. Cal. Apr. 29, 2011) and *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "Closer scrutiny is reserved for the final approval hearing." *Harris*, 2011 U.S. Dist. LEXIS 48878, at *24.

Preliminary approval is proper here because this Agreement falls within the range of reasonable approval, is the product of more than six months of arms-length, non-collusive negotiations by experienced class counsel, does not improperly grant preferential treatment to class representatives, and has no obvious deficiencies. Renick Decl. at ¶¶ 5-9.

### A.    The Proposed Settlement Falls Within the Range of Possible Approval

The recovery here is fair, reasonable, and adequate in light of the continued risk, costs, and uncertainty of litigation. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*

*Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)(internal citation omitted). Approval of a class settlement is justified where "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues in th[e] case." *Id.* at 526. *See also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.").

The settlement provides for the payment of $5,500,000. Based on Plaintiffs' assessment of damages and the review of timecard and payroll data encompassing all shifts during the class period, the settlement represents 50% of the damages incurred prior to Defendant obtaining the rest break exemption from the DLSE on May 12, 2017. Renick Decl. at ¶ 31. This settlement falls squarely within the range of reasonableness. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)(finding settlement amounting to 10% of estimated damages fair and reasonable).

Finally, Class Counsel, who have many years of experience in class action and wage and hour law and extensive experience representing this class in wage and hour class actions against Phillips 66 and its predecessor ConocoPhillips, recommend the proposed settlement and believe that it is in the best interests of the Settlement Class. Renick Decl. at ¶¶ 32-37; Declaration of Joshua Young at ¶¶ 2-5). "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

The Settlement Agreement provides for a reasonable award of attorney's fees. Plaintiffs intend, to seek an award of 25% of the settlement, $1,375,000. The fee award contemplated by the Settlement Agreement in this case is presumptively reasonable under Ninth Circuit precedent. *See Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) (in the 9th Circuit, 25% is the benchmark attorney's fee award in common fund cases); see also *Jones v. GN Netcom, Inc. (In re*

1    *Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011)(courts typically calculate 25%

2    of the [common] fund as the "benchmark" for a reason-able fee award").  Plaintiffs expect their lodestar

3    at the time of Final Approval to be in excess of $650,000 resulting in a multiplier of approximately 2.0.

4    Renick Decl. at ¶ 22.  A multiplier of 2.0 falls within the Ninth Circuit's presumptively acceptable range

5    of 1.0-4.0.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); s*ee also Dyer v.*

6    *Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City*

7    *of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25%

8    of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

9         For the foregoing reasons, Class Counsel strongly believe that the settlement is a fair,

10   reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to

11   continued litigation.

12       **B.     The Proposed Class Settlement is the Product of Serious, Informed, Non-Collusive,
             and Good-Faith Negotiations**

13

14        Settlement negotiations in this case were conducted over more than six months and, at all

15   times, were adversarial, non-collusive, in good faith, and at arms' length.  Both during and after the

16   mediations, the Parties continued to exchange written proposals and discuss settlement terms through

     their counsel.
17

18        Class Counsel worked closely with the Named Plaintiffs and other class members to gain

19   knowledge about the rest period policies and practices and the general working conditions of shift

20   employees at each of the work sites included in the proposed settlement.  The Plaintiffs attended both

21   mediations and Class Counsel sought and obtained input from the Named Plaintiffs in this case

     regarding the terms of a proposed settlement.  Renick Decl. at ¶ 20.
22

23        Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-

24   faith negotiations.

25       **C.     The Settlement Does Not Offer Preferential Treatment to the Class Representatives
             or Other Members of the Class**

26        The settlement does not offer preferential treatment to the class representatives or other

27   members of the class as the net settlement will be fairly distributed amongst the class on a pro rata

28   basis and.  A Credit will be given to each Qualifying Shift (continuous, rotating 12-hour shift) worked

by a member of the Settlement Class for the time period of January 12, 2013 to May 22, 2017, inclusive.  Any Settlement Class Member who has no Qualifying Shifts or a partial Qualifying Shift shall be rounded up to receive at least twenty-five (25) Credits.  The value of each Credit ("Credit Value") will equal the Net Settlement Proceeds divided by the total number of Credits for all Class Members.  Each Settlement Class Member's "Individual Settlement Award" shall equal that individual's total number of Credits multiplied by the Credit Value.  Renick Decl., Exh. "1," ¶¶ 45-61.

While the settlement agreement authorizes an incentive award to each of the three Named Plaintiffs of $7,500, "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."  *Harris,* 2011 U.S. Dist. LEXIS 48878, at *28 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also Resnick*, 779 F.3d at 943 ("Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives.")  Courts routinely approve incentive awards to compensate Named Plaintiffs for the work done on behalf of the class, the risks they incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general.  *Resnick,* 779 F.3d at 943; *see also Rodriguez*, 563 F.3d at 958.

Here, the Named Plaintiffs have participated to the successful prosecution of the Class Action, including taking the risks of serving as the named representatives, providing factual information and documentation necessary to the prosecution of the Class Action, attending multiple mediation sessions, and maintaining contact with Class Counsel.  In exchange for the service awards, the Named Plaintiffs have agreed to execute a declaration acknowledging the safety concerns associated with maintaining radios on during rest breaks and agreed to execute a General Release as to any and all claims they might have against Defendant and the Released Parties.

Moreover, the size of the incentive awards – $7,500 to each of the three Named Plaintiffs – is consistent with the range of incentive awards approved by other federal judges in class action cases. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. Mar. 19, 2015)(courts typically approve incentive awards up to $10,000); *see also Covillo v. Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28-29 (N.D. Cal. Mar. 6, 2014)(ordering an $8,000

1    incentive award for each of the three named plaintiffs); *Chu v. Wells Fargo Invs., LLC, Nos. C* 05-

2    4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *15-16 (N.D. Cal. Feb. 16,

3    2011)(awarding a $10,000 incentive award to two named plaintiffs).

### D.   The Settlement Agreement Has No Obvious Deficiencies

4    The settlement agreement has no obvious deficiencies and comports with the Northern

6    District's Procedural Guidance for Class Action Settlements.  As discussed throughout, the recovery

7    here, constituting 50% of the estimated damages, is fair, reasonable, and adequate in light of the

8    continued risk, costs, and uncertainty of litigation.  The incentive awards for the Named Plaintiffs in

9    the amount of $7,500 are within the range of incentive awards approved by other federal judges in

10   class action cases.  The attorneys' fee provision, seeking an award of 25% of the common fund, is the

11   benchmark percentage in the Northern District, and the Motion for Attorney's Fees will be available on

12   the claims administrator's website for a reasonable period of time of no less than 14 calendar days

13   prior to the deadline for class members to file an objection to the Settlement Agreement.  Renick Decl.

14   Exh. "1," ¶ 62(f**)**.

15   Moreover, as discussed below, the proposed Settlement Notice and the manner of notice agreed

16   upon by the Parties is the best notice that is practicable, as required under Federal Rule of Civil

17   Procedure Rule 23(c).  The proposed Notice adequately describes the nature of the action, the

18   definition of the class certified, the class claims, that a class member may enter an appearance through

19   an attorney if the member so desires, that the court will exclude from the class any member who

20   requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class

21   judgment on members under Rule 23(c).  Renick Decl., Exh. B to the executed Joint Stipulation of

22   Class Action Settlement and Release.

23   The Settlement is non-reversionary and any uncashed checks will be awarded *cy pres* to Loyola

24   Law School Legal Clinics.  Loyola Law School Legal Clinics are a proper *cy pres* awardee because the

25   nexus between the clinics, including a workers' rights clinic, and the California Labor laws at issue in

26   this care is sufficiently direct.  *See Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012) (a *cy pres*

27   award should be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

28

1   silent class members, and must not benefit a group too remote from the plaintiff class).  Renick Decl. ¶

2   18.

3          Finally, the Settlement Agreement provides that within ten (10) days after the filing of the

4   Motion for Preliminary Approval, Defendant shall comply with the "Notification of Settlement"

5   requirements of the Class Action Fairness Act (28 U.S.C. § 1715).  Defendant shall provide Class

6   Counsel with a copy of the notices provided to the appropriate state officials, as defined under 28

7   U.S.C. § 1715.  Prior to the date set for the preliminary approval hearing, Defendant shall file a proof

8   of service with the Court indicating compliance with 28 U.S.C. § 1715.  Renick Decl., Exh. 1 ¶ 60.

9   ## IV.   CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE

10         When the parties enter into a settlement agreement before the district court certifies the class,

11  the Court, at the preliminary approval stage, "may make either a preliminary determination that the

12  proposed class action satisfies the criteria set out in [Federal Rule of Civil Procedure] Rule 23 or

13  render a final decision as to the appropriateness of class certification."  *Spann v. J.C. Penney Corp*.,

14  314 F.R.D. 312, 318 (C.D. Cal. 2016).

15         Conditional class certification of a settlement class is appropriate if the class action meets the

16  four prerequisites identified in Rule 23(a), numerosity, commonality, typicality, and adequacy of

17  representation, and additionally fits within one of the three subdivisions of Rule 23(b).  Here, Plaintiffs

18  have provided a summary of the arguments and evidence which support conditional certification of the

19  class for purposes of settlement, showing that there is numerosity, commonality, typicality, and

20  adequacy of representation, and under Rule 23(b)(3), that common questions of law and fact

21  predominate.

22         ### A.   The Proposed Class is so Numerous that Joinder of All Members is Impracticable

23         The proposed Settlement Class is defined as follows: "all employees who have worked as

24  Operators at Phillips 66's refineries in Rodeo, Santa Maria, and Los Angeles (including the

25  Wilmington and Carson facilities), California, from January 12, 2013, to the date of Preliminary

26  Approval."  The Settlement Class includes approximately 700 members.  Renick Decl. ¶ 15.  The

27  proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a

28  class will benefit the parties and the Court.  *See Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654 (C.D.

Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

### B.     There are Questions of Law and Fact Common to the Class

To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)). "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Id.* at 981.

Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment at Phillips 66, including whether Phillips 66 failed to authorize and permit class members to take rest periods in accordance with applicable California law because it failed to relieve class members during their rest periods of all work duties.

### C.     The Claims Alleged by the Named Plaintiffs are Typical of the Claims Which Could be Alleged by any Member of the Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

The claims alleged by the Named Plaintiffs arise out of the challenged practices and common courses of conduct by Phillips 66 and are based on the same legal theories as the claims of the putative class members, thus they are typical of those claims which could be alleged by any member of the proposed class. The legal issues as to which California laws are violated by such conduct apply equally to Named Plaintiffs and the putative class members. Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

### D.     The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of

the class.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs assert that they are proper representatives of the proposed class because they will fairly and adequately represent and protect the interests of all putative class members as neither the Named Plaintiffs or their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class.  The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class.  Moreover, Plaintiffs' counsel, Hadsell Stormer & Renick, LLP and Gilbert & Sackman, A Law Corporation, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation.  Renick Decl. ¶¶ 32-37; Young Decl. ¶¶ 2-5.

### E.   Common Questions of Law and Fact Predominate and a Class Action is Superior

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Sandoval v. Roadlink United States Pac., Inc*., No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011); Fed. R. Civ. P. 23(b)(3).

### 1.   Common Issues Predominate

"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Edwards v. The First Am. Corp*., 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof.  Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012).  Plaintiffs' main claim in this case is that Phillips 66's lack of a rest break policy or practice which authorizes and permits duty-free rest breaks and uniform failure to provide such breaks is a violation of California law.  This issue is suitable for class adjudication because it pertains to all members of the class.  *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012)("The lack of a

meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."); *Benton v. Telecom Network Specialists, Inc.,* 220 Cal. App. 4th 701, 728-29 (2013)(lack of a break policy is common evidence that the employer failed to provide breaks).

Plaintiffs assert that Phillips 66's defense that it permitted employees duty free rest periods is also common to the class.   *See Lubin v. Wackenhut Corp.*, 5 Cal. App. 5th 926, 957 (2016)(The employer's "defense that it had a policy or practice authorizing rest breaks is susceptible to classwide resolution.").

### 2.    A Class Action is the Superior Method of Adjudication

Class resolution is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the settlement context.  Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Phillips 66, and resulting in the impairment of putative class members' rights and the disposition of their interests through actions to which they are not parties.  The prosecution of separate actions and individualized litigation would also increase the delay and expense to all parties and the court system.  Furthermore, given the relatively small amounts at issue, approximately $5,500 per class member, it is unlikely that any class member (especially a current employee) — acting alone — would have pursued these claims against Phillips 66.  Finally, compared with other methods such as intervention or the consolidation of individual actions, a class action is fairer and more efficient.

## V.    NOTICE TO CLASS OF FINAL APPROVAL HEARING

The Court's order preliminarily approving a class settlement must include, *inter alia,* that notice to be given to all class members who would be bound by the settlement.  Fed. R. Civ. P. 23(e)(1). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  A class settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (internal quotations and citations omitted).

### A.    The Proposed Settlement Notice Contains All of the Required Components

Rule 23 requires that the content of the class notice include, in a manner that is understandable

to potential settlement class members: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The proposed Settlement Notice is set forth as Exhibit A to the Settlement Agreement (Ex. 1 to Renick Decl.) and meets all of the requirements set forth in Rule 23, including: (1) the nature of the litigation; (2) a description of the Settlement Class; (3) the class claims; (4) that a class member may enter an appearance in person or through their own attorney; (5) that a class member can request exclusion from the case; (6) the process and time by which a class member must request exclusion; and (7) the scope and binding effect of the release.  In addition, the Notice of Settlement provides the process and timing for Settlement Class members to object to the proposed settlement, identifies Class Counsel, specifies the amount of proposed attorneys' fees and costs that Class Counsel seek, and explains how to obtain additional information regarding the settlement.    Finally, as noted above, the Settlement Notice will explain to Settlement Class Members how to file a dispute regarding the estimated settlement payment amount, the number of Qualifying Shifts, or the applicable credits.

### B.      The Method of Notice is Appropriate

The Parties have agreed to use A.B. Data to administer the settlement.  A.B. Data will disseminate the proposed Settlement Notice, which contains all of the information required under Rule 23(c)(2)(B).  *See* Renick Decl. ¶ 23; Proposed Settlement Notice, Exh. 2 to Renick Decl.  A.B. Data is an experienced and well-regarded class action settlement administration.  A.B. Data's estimated compensation for the settlement administration is $50,000.  These costs are reasonable and amount to less than one percent of the settlement.  Renick Decl. at ¶ 23.

The Settlement Notice and dispute form will be mailed by First Class Mail, with postage prepaid, to each Settlement Class Member at his or her last-known address maintained in Defendant's employment records.  Any Settlement Notice returned as undelivered shall be sent to the forwarding address affixed thereto, if any.  If no forwarding address is provided for a Settlement Notice that is returned as undelivered, A.B. Data will use a computer search method to locate a current address. If no

current address is located, a notice will be sent via electronic mail if an email address is available for the class member. If no email address is available, the Settlement Notice for that individual will be deemed undeliverable. Any amounts owed to members of the class who cannot be located will be awarded *cy pres* to Loyola Law School Legal Clinics.

The Settlement Agreement provides the following method for Notice to be provided to the Settlement Class Members: Within 21 calendar days following receipt of the order from this Court granting preliminary approval, Defendant will provide the Claims Administrator, A.B. Data, with information regarding class members. Within 14 calendar days after receiving the above information from Defendant, the Claims Administrator will mail, by first-class U.S. mail, the Notice to all class members. Before the mailing, the Administrator will run the addresses through the U.S. Postal Service's Change of Address Database. All Class Members who do not file a timely Request for Exclusion will participate in the allocation of the Settlement and will be sent a check for their allocation of the Settlement. Renick Decl. at ¶ 19.

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminary approve the class settlement, conditionally certify the proposed settlement class, and enter the order submitted concurrently herewith.

DATED: November 7, 2017                    HADSELL STORMER & RENICK LLP

                                           GILBERT & SACKMAN
                                           A Law Corporation

                                           By: *s/ Randy Renick*

                                           By: *s/ Joshua F. Young*
                                           Attorneys for Plaintiffs Kyndl Buzas,
                                           Raudel Covarrubias, and Daniel Runion.

**CERTIFICATE OF SERVICE**

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action; I am a partner in the office of Hadsell Stormer & Renick LLP, a member of the bar of this court and my business address is 128 North Fair Oaks Avenue, California 91103.

On November 7, 2017, I served the document(s) listed below:

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; DECLARATIONS OF COUNSEL; AND EXHIBITS

by causing the document(s) to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all known counsel of record.

I declare under penalty of perjury under the laws of the United State of America and the State of California that the above is true and correct.

Executed on November 7, 2017 in Los Angeles, California

/s/ Randy Renick
Randy Renick

I hereby attest that pursuant to Civil L.R. 5-1-(i)(3), I have received concurrence in the filing of this document from the other signatories.

/s/ Randy Renick
Randy Renick