RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
SPRINGSONG COOPER (CA Bar No. 307845)
(Email: scooper@hadsellstormer.com)
**HADSELL STORMER & RENICK, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

JAY SMITH (California Bar No. 166105)
(Email: Js@Gslaw.Org)
JOSHUA F. YOUNG (California Bar No. 232995)
(Email: Jyoung@Gslaw.Org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

Attorneys for Plaintiffs Kyndl Buzas, Raudel
Covarrubias, and Daniel Runions

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYNDL BUZAS, RAUDEL COVARRUBIAS, AND DANIEL RUNIONS, individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>PHILLIPS 66 COMPANY and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 4:17-cv-00163-YGR<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         March 6, 2018<br>Time:         2:00 p.m.<br>Location:    Oakland Courthouse<br>                   Courtroom 1 - 4th Floor<br><br>Honorable Yvonne Gonzalez Rogers |

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 6, 2018, at 2:00 p.m., in Courtroom 1 of the above-entitled court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions, on behalf of themselves and all members of the conditionally certified class, will move and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the order concurrently filed herewith granting final approval of the class action settlement and the plan of allocation and entry of judgment.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, memorandum of points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records and files in this action.

DATED:  February 20, 2018

**HADSELL STORMER & RENICK LLP**

By: s/ Randy Renick

Attorneys for Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions

**GILBERT & SACKMAN**
**A Law Corporation**

By: s/ Joshua F. Young

Attorneys for Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions

PLTFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGMT & PLAN OF ALLOCATION, CASE NO. 4:17-CV-00163-YGR

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS .................................................................................2

      A.    Procedural Background.............................................................................2

      B.    Pertinent Factual Background..................................................................3

            1.    Operators on 12-Hour Shifts Work on a
                  Rotating Shift Schedule. ...............................................................3

            2.    DLSE Grants Phillips 66 an Exemption
                  from the Off-Duty Rest Break Requirement................................4

III.  ARGUMENT ......................................................................................................5

      A.    The Court-Approved Notice Plan Was Fully Implemented
            and Satisfies Rule 23 Requirements. ......................................................5

      B.    The Settlement is Fair, Adequate and Reasonable
            and Should be Granted Final Approval. ..................................................8

            1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity
                  and Likely Duration of Further Litigation ...................................9

            2.    The Amount Offered in Settlement...............................................10

            3.    The Presence of Governmental Entities.......................................10

            4.    Experience and Views of Counsel ...............................................11

            5.    The Reaction of the Class Members .............................................11

      C.    The Plan of Allocation Is Fair, Adequate and Reasonable
            and Should be Approved...........................................................................12

      D.    The Court Should Grant Plaintiffs' Request for
            Incentive Awards for the Three Named Plaintiffs ..................................15

      E.    Final Certification of the Class for Settlement Purposes Is Proper. ......17

            1.    The Settlement Class Satisfies the Rule 23(a) Requirements....18

            2.    The Settlement Class Meets the Requirements of Rule 23(b) ....19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>
### (Continued)

**Page(s)**

IV.    CONCLUSION...........................................................................................................21

**TABLE OF AUTHORITIES**
(CONTINUED)

**Page(s)**

**Cases**

*Augustus v. ABM Security Services, Inc.*,
2 Cal. 5th 257 (2016) ............................................................................................5, 9, 19

*Bell v. Home Depot U.S.A., Inc.*,
No. 2:12-cv-02499 ...........................................................................................................9

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................................16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................................................12, 13

*Bradley v. Networkers Int'l, LLC*,
211 Cal. App. 4th 1129 (2012) ......................................................................................20

*Brinker Restaurant Corp. v. Superior Court*,
53 Cal.4th 1004 (2012) ..................................................................................................19

*Browne v. Am. Honda Motor Co.*,
2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) .............................................8

*In re Capital One Tel. Consumer Prot. Act Litig.*,
2015 U.S. Dist. LEXIS 17120 (N.D. Ill. Feb. 12, 2015) ..............................................17

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) .............................................................................7

*Chu v. Wells Fargo Invs.*,
LLC, No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) .....................16

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) .........................................................................12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..............................................................................................9

*In re Continental Illinois Securities Litig.*,
962 F.2d 566 (7th Cir. 1992) ..........................................................................................15

*Covillo v. Specialty's Café*,
No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) ...........16

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000)......................................................................................15

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) ................................................................15

*Edwards v. The First Am. Corp.*,
   798 F.3d 1172 (9th Cir. 2015) ..............................................................19

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................18

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................20

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................18

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ..............13

*In re High-Tech Emple. Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015).......8, 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
   Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App.
   LEXIS 1626 (9th Cir. Jan. 23, 2018) ......................................................17

*Kyndl Buzas, et al., v. Phillips 66 Co.*,
   Case No. 4:17-cv-00163-YGR . N.D. Cal. Case No. CV-14-00163, Dkt. #1 ...................2

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .................................................................6

*Lemus v. H&R Block Enters. LLC*,
   2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012).............................16, 17

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .............................................................8, 10

*Lubin v. Wackenhut Corp.*,
   5 Cal. App. 5th 926, 957 (2016) ...........................................................20

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) .............................................................5, 7

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

**Cases**

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................9, 17, 19

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
  618 F.3d 988 (9th Cir. 2010) ..................................................................................7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................10, 11, 12

*In re Netflix Privacy Litig.*,
  No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ........................11

*Officers for Justice v. Civil Svc. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................................8

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) ............................14

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................................6

*Sandoval v. Roadlink United States Pac., Inc.*,
  No. EDCV 10-00973 ..............................................................................................19

*Sandoval v. Tharaldson Employee Mgmt, Inc.*,
  2010 U.S. Dist. LEXIS 69799 ...............................................................................17

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ..........................................................................18

*Spalding v. City of Oakland*,
  No. 11-cv-02867 TEH, Dkt. No. 99 (N.D. Cal. Sept. 9, 2013) ................................16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..........................................................................15, 16

*Stewart v. San Luis Ambulance, Inc.*,
  878 F.3d 883 (9th Cir. 2017) ..................................................................................9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................................7, 8

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ..................................................................................8

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

**Cases**

*Viceral v. Mistras Group, Inc.*
    No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ........................................13, 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005)...........................................10

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ...............................15

**Statutes**

Class Action Fairness Act, 28 U.S.C. §1715 ................................................................................11

Cal. Labor Code section 226.7..........................................................................................................5

Cal. Labor Code § 2699(l)(2).........................................................................................................10

Loyola Law ....................................................................................................................................14

Private Attorneys General Act ................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ......................................................................................................................18

Fed. R. Civ. P. 23(b) ......................................................................................................................19

Fed. R. Civ. P. 23(a)(2) ..................................................................................................................18

Fed R. Civ. P. 23(c)(2)......................................................................................................................5

Fed. R. Civ. P. 23(e)(2)......................................................................................................................5

Fed. R. Civ. P. 23(b)(3)....................................................................................................17, 18, 19, 20

Fed. R. Civ. P. 23(c)(3)......................................................................................................................5

**Other Authorities**

Industrial Welfare Commission (IWC) Wage Order No. 1-2001 ........................................................4, 19

Industrial Welfare Commission (IWC) Wage Order 4-2001 ............................................................5, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

# I.    INTRODUCTION

Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions ("Plaintiffs") seek final approval of the proposed class action settlement ("Settlement") with Defendant Phillips 66 Company ("Phillips 66") of wage and hour claims brought on behalf of refinery Operators employed by Phillips 66.  Plaintiffs also seek approval of the plan of allocation.

On December 6, 2017, the Court granted Plaintiffs' Motion for Preliminary Approval of Settlement Agreement.  Dkt. #39.  The Settlement provides that Defendant Phillips 66 Company will pay $5,500,000 for the benefit of the Class as defined as: "all employees who have worked as Operators at Phillips 66's refineries in Rodeo, Santa Maria, and Los Angeles (including the Wilmington and Carson facilities), California, from January 12, 2013, to the date of Preliminary Approval [December 6, 2017]." Dkt. #39, Ex. 1, ¶¶ 17, 21.  The settlement provides for cash payment to Class Members according to the number of 12-hour shifts worked by each class member during the class period (*Id.* at ¶¶ 42-45); additional service awards not to exceed $7,500 for each of the three named Plaintiffs (*Id.* at ¶¶ 25-26); $50,000 to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out (*Id.* at  ¶37); an estimated $50,000 to A.B. Data for claims administration (*Id.* at ¶¶ 24, 36); and reasonable attorneys' fees and costs (*Id.* at ¶¶ 21, 22, 30).

The Court should grant final approval of the Settlement as it is fair, reasonable, and adequate.  The Settlement provides for payment of $5,500,000 on an all-cash, non-reversionary basis, and is the result of arms-length negotiations following an extensive investigation of liability and damages conducted by Plaintiffs.  The net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorney's fees, costs, incentive awards, and administration costs is $3,988,815.03. Renick Dec., ¶ 19. The average payment to each of the 677 Class Members is $5,881.20.  Renick Dec., ¶20; Schachter Dec., ¶11. Thus, the financial benefit conferred upon the class is significant, and the recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

1
2
3
4
5

In addition, the reaction of the Class Members has been very positive and favors approval of the Settlement.  None of the 677 Class Members have objected, and only three have opted out. Schachter Dec., ¶9. In addition, the Claims Administrator properly implemented the Notice Plan, and only 10 of the 677 addressed notice packets remain undeliverable.  There were two timely disputes, which have since been resolved based on data provided to the Claims Administrator.

6
7
8
9

The Court should also approve the plan of allocation, whereby the court-approved attorney's fees and costs,[1] court-approved service awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement, and a formula based on Qualifying Shifts is used for distribution to the Class Members of the resulting Net Settlement Proceeds.

10
11

In addition, the requested incentive awards in the amount of $7500 for each of the Named Plaintiffs is consistent with a fair, just and adequate settlement.

12

Final approval of certification for purposes of settlement under Fed. R. Civ. P. 23 is also proper.

13

## II.    STATEMENT OF FACTS

14

### A.    Procedural Background

15
16
17
18
19
20
21
22
23

On January 12, 2017, Plaintiffs filed their complaint against Defendant Phillips 66 Company ("Phillips 66") in the Northern District of California, captioned as *Kyndl Buzas, et al., v. Phillips 66 Co.*, Case No. 4:17-cv-00163-YGR ("the Lawsuit").  N.D. Cal. Case No. CV-14-00163, Dkt. #1.  The Lawsuit alleges the following causes of action: (1) failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) penalties under the California Private Attorneys General Act; and (4) violation of the California unfair competition law.  Plaintiffs seek unpaid wages, statutory penalties, restitution, attorney's fees and costs, interest, and injunctive and declaratory relief for the time period from January 12, 2013 to the present.  Declaration of Randy Renick ("Renick Dec."), ¶¶ 3-4.

24
25

Plaintiffs conducted extensive investigation of Defendant's wage and hour practices at their three California refineries in Los Angeles, Santa Maria, and Rodeo, particularly in regard to the provision of

26
27
28

[1] Plaintiffs seek reimbursement of $32,760.29 in costs. *See* Supplemental Declaration of Randy Renick in Support of Motion for Attorney's Fees and Reimbursement of Costs, ¶ 3; Declaration of Joshua F. Young Declaration in Support of Motion for Attorney's Fees and Reimbursement of Costs, ¶ 18.

rest breaks.  Plaintiffs interviewed operators at each of the refineries, and reviewed thousands of pages of relevant written materials, including employee handbooks, training materials and emergency protocol materials.  In addition, Defendant provided, and Plaintiffs reviewed Phillips 66's payroll and timecard data containing all of the shifts worked by class members during the class period and the specific pay rate which applied to each of those shifts.  Based on this extensive investigation and review of discovered materials, Plaintiffs were able to thoroughly evaluate liability and determine damages. Renick Dec., ¶ 9.

On March 17, 2017, the Parties, including the three Named Plaintiffs, participated in mediation with David Rotman in San Francisco, California, but were unable to reach a settlement agreement that day and agreed to further mediation. Renick Dec., ¶ 5.  On May 12, 2017, Plaintiffs filed a First Amended Complaint.  *Id.* at ¶ 6.  On June 20, 2017, the Parties participated in a second mediation with David Rotman and reached a settlement in the amount of $5,500,000.  *Id.* at ¶ 8.  The Settlement was ultimately reduced to a written settlement agreement and executed by all parties. *Id.* The Settlement was preliminarily approved by the Court on December 6, 2017.  Dkt. #39.

### B.    Pertinent Factual Background

#### 1.    Operators on 12-Hour Shifts Work on a Rotating Shift Schedule.

Defendant Phillips 66 operates three refineries in California, one in Los Angeles (consisting of the Carson and Wilmington facilities), one in Santa Maria, and one in Rodeo.  Each refinery operates continuously, 24 hours a day, seven days a week.  The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences.  *Id.* at ¶¶ 10-11.

There are generally two types of Operators: Console (also known as "Board" or "Inside") Operators and Field (or "Outside") Operators.  Console Operators sit at control boards, called "consoles," inside a control facility and monitor and make adjustments to the levels, pressures, temperatures, and other indicators on equipment, products, and processes in their units to ensure that the units are operating properly.  Outside Operators work outside in the units and in satellite operating shelters and they are responsible for maintaining, monitoring, inspecting, and making adjustments to equipment at the direction of Console Operators and supervisors.  To keep the refineries operating continuously, each unit has four crews of Operators who rotate between day and night shifts.  Every

crew on every shift must have certain minimum "crew positions" filled by an Operator at all times.  *Id.* at ¶¶ 12-13.

Operators who work a 12-hour shift remain responsible for their units throughout their shifts. Throughout their shifts, Phillips 66 requires Plaintiffs and the other Operators to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units. In order to do so, Plaintiffs and the other Operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  Plaintiffs are also required to remain in contact with supervisors and other employees working in their unit throughout their shifts.  As a result, Plaintiffs never receive off-duty breaks because they are constantly and continuously responsible for their units. *Id.* at ¶ 13.

Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions, the three Class Representatives, were employed by Defendant as operators at its California refineries as non-exempt hourly employees during the class period.  Kyndl Buzas was employed as an Operator at the Rodeo (San Francisco) refinery until February 11, 2018.  Declaration of Kyndl Buzas, ¶ 2. Raudel Covarrubias is currently employed as a Head Operator at the Los Angeles refinery, and Daniel Runions is currently employed as an Operator at the Santa Maria refinery.  Declaration of Raudel Covarrubias, ¶ 2; Declaration of Dan Runions, ¶ 2.

Since January 12, 2013, Plaintiffs and the other operators have worked 12-hour shifts without receiving off-duty rest periods because throughout their shifts they are required to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units. In order to do so, Plaintiffs are required to remain attentive, carry radios, and be reachable at all times during their shifts.  Renick Dec., ¶ 13.

### 2.    DLSE Grants Phillips 66 an Exemption from the Off-Duty Rest Break Requirement

After the commencement of this lawsuit, Phillips 66 applied to the California Division of Labor Standards Enforcement (DLSE) to seek a permanent exemption from Industrial Welfare Commission (IWC) Wage Order No. 1-2001 sections 12(A) and 12(B) [rest periods] to allow all of its approximate 530 operators at its three California refineries to take "on-call" rest breaks with radios on.  On May 22,

PLTFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGMT & PLAN OF ALLOCATION, CASE NO. 4:17-CV-00163-YGR

2017, the DLSE granted Phillips 66 an exemption ("DLSE Exemption") from the California Supreme Court's interpretation of requirements for rest breaks in *Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257 (2016),[2] effective from May 22, 2017 through January 31, 2019.  Renick Dec., ¶ 7.

## III.   ARGUMENT

### A.   The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23 Requirements.

Rule 23 requires for class action settlements that a court direct notice in a "reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(2).  Rule 23 further requires that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and that the notice state the nature of the action, the class definition, the class claims, issues, or defenses, the right to individual legal representation, the right to request exclusion, and the binding effect of a judgment under Rule 23(c)(3).  Fed R. Civ. P. 23(c)(2).  The notice "must present a fair recital of the subject matter and proposed terms and give[] an opportunity to be heard to all class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977).

On December 6, 2017, the Court entered an order preliminarily approving, *inter alia*, the proposed Notice of Class Action Settlement and its distribution.  Dkt. 39, ¶ 12 (p. 5), *see* Ex. 2 thereto. It found that the Notice "fairly and adequately advises the potential Class Members of the terms of the proposed Settlement and the claims process for the class members to obtain the benefits available thereunder, as well as the right of class members to opt out of the class, to challenge the number of shifts reported by Defendant from its records, to file documentation in objection to the proposed Settlement,

---

[2] In *Augustus*, the California Supreme Court held that during rest periods taken pursuant to Labor Code section 226.7 and Industrial Welfare Commission (IWC) Wage Order No. 4-2001, "employers must relieve employees of all duties and relinquish control over how employees spend their time."  2 Cal. 5th at 269.  The Court further held that "an employer cannot satisfy its obligations under Wage Order 4, subdivision 12(A) while requiring the employees to remain on call." *Id.* at 270.  Addressing the facts before it, the Court concluded that "[the employer's] policy requiring plaintiffs to keep radios and pagers on, remain vigilant, and respond if the need arose" was an example of a "broad and intrusive degree of control." *Id.* at 270.  The Court further concluded that policies, which "require[s] responsibilities substantially similar to plaintiffs' ordinary job duties" during breaks, "conflict with an employer's obligation to provide breaks relieving employees of all work-related duties and employer control." *Id.* at 271.

PLTFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGMT & PLAN OF ALLOCATION, CASE NO. 4:17-CV-00163-YGR

and to appear at the Final Approval Hearing." *Id.* It further found that the proposed Notice and distribution "comports with all constitutional requirements, including those of due process." *Id.*

Pursuant to and in compliance with the Preliminary Approval Order, appointed Claims Administrator A.B. Data mailed the Notice to the Settlement Class Members. Schachter Dec., ¶1, Ex. A thereto. The Notice provided to the class included detailed information regarding the following: the nature of the case; the definition of the class; the terms of the Settlement; a class member's rights with respect to participation in the Settlement and the consequences of exercising those rights; the total settlement amount, including the portions of the total settlement amount allocated to PAGA penalties and for payment of service awards, attorneys' fees and costs, and administrative costs; and the specific formula for calculating each member's claim. *Id.* The Notice sent to each class member was also customized to include the estimated amount each Class Member should expect to receive, the total number of Qualifying Shifts worked by that Class Member, and the number of Qualifying Shifts worked during each calendar year of the class period. *Id.* Thus, the information provided in the Notice exceeds that which is required. *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)(proper notice "does not require an estimate of the potential value of [the] claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)(The notice is sufficient if it "describes the aggregate amount of the settlement fund and the plan for allocation."). Indeed, a class notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (citation omitted).

The Claims Administrator carried out and fully complied with Notice Plan approved by the Court, *see* Dkt. 39, ¶12. The Claims Administrator determined from the data provided by Defendant on December 11, 2017, that there were 671 Settlement Class Members, and sent the Notice to those Class Members on December 26, 2017.[3] Schachter Dec., ¶3. That same day, the Claims Administrator created

---

[3] Notably, there are in total 677 Settlement Class Members. On February 9, 2018, the parties provided the Claims Administrator with the names and mailing addresses for six additional Settlement Class Members to whom the Notice needed to be mailed as they were not included in the original data received from Defense Counsel. The next business day, on February 12, 2018, the Claims Administrator mailed a copy of the Notice to each of the six additional Settlement Class Members. All six Class Members are in receipt of the Notice and have been contacted by Class Counsel. Young Dec., ¶8.

a case-specific website that provided a summary of the Settlement and posted downloadable Settlement documents, including the Notice, Settlement Agreement and Preliminary Approval Order.  Schachter Dec., ¶5.  Of the 671 Notices mailed on December 26, 2017, only 13 were returned as undeliverable. Three of the 13 were re-mailed to either a forwarding address or an updated address located by the Claims Administrator.  Schachter Dec., ¶7.  Thus, the Notice Plan provided the "best notice that is practicable under the circumstances" as notice was provided to each Class Member who could be identified based on Defendant's records, and only 10 of 671 addresses could not be verified through the data provided by Defendant or through other reasonable efforts.

Further, the 45-day deadline to object or opt out approved by the Court satisfies the notice requirements of Rule 23 and does not infringe on due process rights. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact.").  Indeed, the Ninth Circuit has held that mailing the notice 31 days before the deadline for objections is adequate.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977)(26 days to opt out after mailing of notice adequate where class members were informed participants).

On January 11, 2018, the Claims Administrator posted to the website Plaintiffs' Notice and Motion for Attorneys' Fees and Reimbursement of Costs, 29 days prior to the objection/opt-out deadline. Schachter Dec., ¶5.  This posting was consistent with the Court's order granting preliminary approval and satisfies the standard for notice set by the Ninth Circuit in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for attorney's fees be made available to class members prior to the deadline for objections in order that they have a full and fair opportunity to contest the fee sought.

///

The parties also provided the Claims Administrator with data showing that seven of the Class Members on the list were entitled to more shifts than the original data from Defendant stated.  Renick Dec., ¶41. Class Counsel followed up by phone with each of the seven regarding their increased share of the Settlement. *Id.*

**B.      The Settlement is Fair, Adequate and Reasonable and Should be Granted Final Approval.**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). In evaluating a proposed class action settlement, "[t]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375. "A district court may consider some or all of the following factors when making this determination: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *8 (N.D. Cal. Sep. 2, 2015)(*citing Officers for Justice*, 688 F.2d at 625).

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475, at *40 (C.D. Cal. July 29, 2010); *accord In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118051, at *17. Thus, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)(citation omitted).

The recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

8

1

2

### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In determining whether a proposed settlement is reasonable and adequate, "the [trial] judge does not try out or attempt to decide the merits of the controversy," and an appellate court "need not and should not reach any dispositive conclusions on the admittedly unsettled legal issue." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974).

Here, while Plaintiffs believe their case against Defendant is strong, the Settlement eliminates significant risks they would face if the action were to proceed against Defendant.  Renick Dec., ¶ 15.

Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), provided clear guidance regarding an employer's rest break obligations under California law and confirmed Defendant Phillips 66's failure to provide its Operators with lawful rest breaks. Renick Dec., ¶ 16.  Nonetheless, district courts have since diverged in their interpretation and application of the decision.  *See, e.g., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017)(concluding *Augustus* not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call).  Moreover, the Ninth Circuit has certified questions to be decided by the California Supreme Court regarding the application of rest- and meal-period regulations to ambulance attendants working twenty-four hour shifts of duty on grounds that *Augustus* did not apply.  *Stewart v. San Luis Ambulance, Inc.*, 878 F.3d 883, 886-87 (9th Cir. 2017).

Moreover, with class claims for violation of rest break and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. *See, e.g.*, Renick Dec., ¶¶ 17-18. (class actions involving overtime, living wage, and/or meal and rest break violations litigated five years, six years, and more than 10 years before resolving).  Further, it was likely that the action would be highly contested and lengthy given the inherently complex nature of class actions and the manner in which the prior wage and hour class action involving the same defendant and the same counsel on both sides was litigated.  *Id.*  Accordingly, many more years of litigation and an appeal was a

9

1   very real possibility here.  Continued litigation against Defendant would inevitably involve significant

2   additional expenses and protracted legal battles, which are avoided through settlement.  *In re Visa*

3   *Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d

4   Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for

5   a long time, was great.").

6          Thus, on balance, these factors weigh in favor of the Settlement.

7                  **2.     The Amount Offered in Settlement**

8          "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are

9   preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomm. Coop. v.*

10  *DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Approval of a class settlement is justified where

11  "the settlement terms compare favorably to the uncertainties associated with continued litigation

12  regarding the contested issues in th[e] case."  *Id.* at 526.  A settlement, therefore, need not obtain 100%

13  of the damages and may, in fact, provide only "a fraction of the potential recovery" sought to be found

14  fair and reasonable.  *Linney*, 151 F.3d at 1242.

15         The settlement here provides for the payment of $5,500,000.  The net settlement to be

16  distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorney's fees,

17  costs, incentive awards, and administration costs is $3,988,815.03.  Renick Dec., ¶ 19. The average

18  payment to each of the 677 Class Members is at least $5,881.20.  Renick Dec., ¶ 20; Schachter Dec.,

19  ¶12. Thus, the financial benefit conferred upon the class is significant.

20         Additionally, based on Plaintiffs' assessment of damages and the review of timecard and payroll

21  data encompassing all shifts during the class period, the settlement represents 50% of the damages

22  incurred prior to Defendant obtaining the rest break exemption from the DLSE on May 12, 2017.

23  Renick Dec., ¶ 22.

24                 **3.     The Presence of Governmental Entities**

25         There are no government entities participating in the Settlement.  Plaintiffs, however, provided a

26  copy of the settlement to the California Labor and Workforce Development Agency ("LWDA") in

27  accordance with Labor Code § 2699(l)(2) on November 7, 2017.  Renick Dec., ¶ 23.  As of the filing of

28  this motion, the LWDA has not filed an objection or raised a concern regarding the Settlement. *Id.*  In

addition, Defendant provided notice of settlement pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715, to the California CAFA Coordinator at the Office of the Attorney General, Consumer Law Section, and U.S. Attorney General Jeff Sessions on November 14, 2017. Dkt. #36. Neither attorney general's office has filed an objection or raised a concern regarding the Settlement.  Renick Dec., ¶ 24.

The absence of any objection or concern raised by a government entity provided notice weighs in favor of the Settlement.[4]

### 4.    Experience and Views of Counsel

It is Class Counsel's recommendation and belief that the proposed settlement is in the best interests of the Settlement Class.  Renick Dec., ¶ 32; Declaration of Joshua F. Young, ¶7.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.

*DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

This Settlement is the product of arms-length, non-collusive negotiations attended by experienced class counsel.  Renick Dec., ¶ 21.  Prior to settlement, a complete investigation of Defendant's wage and hour practices with regard to rest breaks and an extensive review of time card and payroll data were conducted to evaluate liability and damages.  Renick Dec., ¶ 22. Based on their evaluation and expertise, Class Counsel strongly believe that the settlement is a fair, reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.[5] Renick Dec., ¶¶ 32-39; Young Dec., ¶¶ 4-7.

### 5.    The Reaction of the Class Members

The reaction of the Class Members has been very positive and favors approval of the Settlement.

---

[4] "CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *24 (N.D. Cal. Mar. 18, 2013).

[5] Class Counsel "represents [the] interests of the class as a whole" and it is Class Counsel's responsibility to "determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole."  Fed. R. Civ. P. 23, cmts. 2003 amdts., ¶(B)(1).

Here, the Notice informed Settlement Class Members that Opt-Out Requests were to be sent to the Claims Administrator, such that they are postmarked on or before February 9, 2018.  The Notice also sets forth the information that must be included in each Opt-Out Request. Schachter Dec., ¶ 8. In addition, the Notice informed Settlement Class Members that Objections were to be filed or mailed to the Court, such that they are postmarked on or before February 9, 2018. *Id.* at ¶ 9.  None of the 677 Class Members have objected to the Settlement, and only three have opted out. Schachter Dec., ¶8.  Two disputes were submitted, which have been resolved by the Claims Administrator after reviewing the data provided by the Class Member and Defendant.  Schachter Dec., ¶ 10.

"The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."  *DIRECTV,* 221 F.R.D. at 529. Indeed, "it is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Id.* at 529.

For all of the foregoing reasons, the Settlement should be finally approved because it is fair, reasonable, and adequate, and in the best interests of the Settlement Class Members.

### C.    The Plan of Allocation Is Fair, Adequate and Reasonable and Should be Approved

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable, and adequate.'" *In re Citric Acid Antitrust Litig.,* 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  Here, the plan of allocation provides that court-approved attorney's fees and costs, court-approved service awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement Fund ($5,500,000) to determine the "Net Settlement Proceeds."  Dkt. #39, Ex. 1, ¶¶ 21, 42, thereto. The Net Settlement Proceeds are then allocated for each member of the Settlement Class. *Id.* at ¶ 43.

*Attorney's Fees*—With respect to awarding attorney's fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011).  On January 11, 2018, Plaintiffs filed their Motion for Attorney's Fees and Reimbursement of Costs seeking fees in the amount of $1,375,000 (25% of settlement) and costs. Dkt. #40; *see* Renick

12

Dec., ¶ 25. The motion reflects that the fees and costs requested by Plaintiffs are reasonable and justified based on the relevant factors weighed in determining such awards. *See* Dkt. # 40. Moreover, the request is void of any evidence of collusion such as counsel receiving a disproportionate distribution in comparison to the class, a negotiated "clear sailing agreement," or the reversion to Defendant of any unawarded fee amount. *See Bluetooth*, 654 F.3d at 947; *see* Renick Dec., ¶ 25. Here, Plaintiffs seek fees at the Ninth Circuit 25% of the fund benchmark (Dkt. #40), there was no agreement of non-opposition by Defendant to Plaintiffs' request (Dkt. #39, Ex. 1, ¶¶ 30-31, thereto), and the entire settlement amount is non-reversionary (Dkt. #39, Ex. 1, ¶22).

*Incentive Awards*—As addressed herein, *see infra* Section III.D., Plaintiffs seek an incentive award in the amount of $7,500 for each of the Named Plaintiffs. "The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011)(*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation.

*Administrative Costs*—Plaintiffs also request final approval for claims administration costs to be paid to Claims Administrator A.B. Data in the amount of $43,424.68. Schachter Dec, ¶12, Ex. D thereto. The amount requested is fair and reasonable give that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms. *See* Schachter Dec., ¶¶ 2-10. The costs are also below the $50,000 estimated amount preliminarily approved by the Court. *See* Schachter Dec., ¶12; Renick Dec., ¶26.

*PAGA penalties*—The Settlement provides that $50,000 will be allocated to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out. Dkt. #39, Ex. 1, ¶ 37, thereto; *see* Renick Dec., ¶¶ 27, 29. This amount is reasonable and adequate given that the possible recovery on the PAGA claim varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. Renick Dec., ¶ 27. For instance, in *Viceral v.*

*Mistras Group, Inc.* No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017), the Court granted final approval of a $6,000,000 settlement with a $20,000 allocation for the PAGA claim because plaintiffs faced "a substantial risk of recovering nothing on either the PAGA or class claims." *Id.* at *3. The court referred to its prior considerations at preliminary approval, which included that "courts have often exercised discretion to reduce PAGA verdicts below the statutory penalty." *See Viceral*, 2016 WL 5907869 at *8. This Court should, therefore, approve the $50,000 allocation for the PAGA claim as adequate and reasonable especially since the LWDA has filed no objection despite being served with notice of settlement on November 7, 2017.  Renick Dec., ¶ 23.

*Class Member Payments*—The formula in the Settlement Agreement provides to each Class Member a cash payment which equates to a percentage of the net recovery calculated based upon the number of Qualifying Shifts worked during the Class Period.  Renick Dec., ¶ 28.  Specifically, the formula for allocation of the Net Settlement Proceeds among the members of the Settlement Class is as follows: One Credit is given to each rotating, continuous 12-hour shift worked by a member of the class ("Qualifying Shift") during the time period from January 12, 2013 to May 22, 2017, inclusive.  The value of each Credit ("Credit Value") equals the Net Settlement Proceeds divided by the total number of Credits for all Class Members.  Each Dkt. #39, Ex. 1, ¶¶ 19, 43-45, thereto.  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994). The formula here is reasonable as it relies on a "neutral and uniform metric by which to allocate the Settlement."  *See In re High-Tech*, 2015 U.S. Dist. LEXIS 118051, at *23-24 (finding plan of allocation appropriate where formula was based on each Class Member's relative share of base salary, a "neutral and uniform metric" ).

Following the issuance of an order granting final approval of the settlement and plan of allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the distribution of the Net Settlement Proceeds by mailing individual checks to the Settlement Class Members.  If any checks remain uncashed, the Claims Administrator will attempt to locate the impacted Class Member and re-issue checks with an expiration of 180 days.  If any Settlement Class Member cannot be located within 180 days, uncashed settlement checks will be awarded *cy pres* to the Loyola

1  Law School Legal Clinics. Dkt. 39, Ex. 1, ¶¶ 70-72. The Loyola Law School Legal Clinics are a proper

2  *cy pres* awardee because the nexus between the clinics, including a workers' rights clinic, and the

3  California Labor laws at issue in this case is sufficiently direct.  *See Dennis v. Kellogg Co.*, 697 F.3d

4  858, 865 (9th Cir. 2012)(a cy pres award should be guided by (1) the objectives of the underlying

5  statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from

6  the plaintiff class).  Renick Dec. ¶ 29.

7          For all of the reasons set forth herein and the accompanying declarations, the Plan of Allocation

8  is fair, reasonable, and should be approved.

9          **D.    The Court Should Grant Plaintiffs' Request for Incentive Awards for the Three**
            **Named Plaintiffs**

10         The requested incentive awards in the amount of $7,500 for each of the Named Plaintiffs is

11  consistent with a fair, just and adequate settlement.[6]  "Courts routinely approve incentive awards to

12  compensate named Plaintiffs for the services they provided and the risks they incurred during the course

13  of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *see*

14  *also Staton*, 327 F.3d at 977 (9th Cir. 2003)(reasonable incentive payments are appropriate for named

15  plaintiffs); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)(stating that an

16  incentive award in such amount "as may be necessary to induce [the class representative] to participate

17  in the suit" is appropriate).  Plaintiffs' incentive award request is based upon (1) the actions taken by the

18  Named Plaintiffs to protect the interests of the class and the degree to which the class has benefitted

19  from those actions; (2) the time and effort the Named Plaintiffs expended in pursuing the litigation;

20  (3) the risk each undertook in commencing suit; and (4) the proportion of the payments relative to the

21  settlement amount and the average settlement amount.  *Staton*, 327 F.3d at 977; *Wren v. RGIS Inventory*

22  *Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *94 (N.D. Cal. Apr. 1, 2011).

23         The class has greatly benefited from the Named Plaintiffs' assistance in the litigation.  The

24  Plaintiffs ensured a fair settlement of the case by securing and providing class counsel the information

25  necessary to file the complaint, assisting class counsel in preparation for mediation, traveling to attend

---

[6] The incentive award is in addition to the Named Plaintiffs' Class Member share of the settlement.

1   the mediation sessions, engaging in settlement negotiations, communicating regularly with class

2   counsel, and after a settlement was reached, discussing the settlement terms with members of the

3   putative class.  Buzas Decl. ¶¶ 3-8; Runions Decl. ¶¶ 3-8; Covarrubias Decl. ¶¶ 3-8.  *See Bellinghausen*

4   *v. Tractor Supply Co*., 306 F.R.D. 245, 268 (N.D. Cal. 2015)(awarding $15,000 for the plaintiff's time

5   spent securing and speaking with counsel, reviewing documents, assisting counsel in preparing for

6   mediation, traveling to the mediation session, and engaging in settlement negotiations and for the risks

7   associated with initiating the litigation); *see also Chu v. Wells Fargo Invs*., LLC, No. C 05-4526 MHP,

8   2011 U.S. Dist. LEXIS 15821, at *14 (N.D. Cal. Feb. 15, 2011)(awarding $10,000 to each named

9   plaintiff because they adequately demonstrated they assisted in the preparation and settlement of this

10  litigation notwithstanding some risk of professional harm due to their public participation).

11      When a class representative shoulders some degree of personal risk in joining the litigation, such

12  as workplace retaliation or financial liability, an incentive award is especially important.  *Staton*, 327

13  F.3d 977; *see also Bellinghausen,* 306 F.R.D. at 267 (finding incentive awards particularly appropriate

14  in wage-and-hour actions because plaintiffs undertake a significant "reputational risk" by bringing suit

15  against their employers).  Here, each of the named Plaintiffs took the risk that future employment,

16  whether it was with Defendant or another refinery, would be jeopardized.  Buzas Decl. ¶ 9; Runions

17  Decl. ¶ 9; Covarrubias Decl. ¶ 9.  They took this risk while others chose not to, and they took the risk to

18  benefit the other class members.

19      The size of the incentive awards – $7,500 to each of the three named Plaintiffs – is consistent

20  with the range of incentive awards approved by other federal courts in class action cases, including

21  courts of this District. *See Bellinghausen*, 306 F.R.D. at 268 (awarding $15,000); *Lemus v. H&R Block*

22  *Enters. LLC*, 2012 U.S. Dist. LEXIS 119026, at *21 (N.D. Cal. Aug. 22, 2012) (approving $15,000

23  service awards); *Chu,* No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821, at *14 (finding $10,000

24  appears in line with other incentive awards in this Circuit); *Spalding v. City of Oakland*, No. 11-cv-

25  02867 TEH, Dkt. No. 99 (N.D. Cal. Sept. 9, 2013) (approving $9,000 incentive award); *Covillo v.*

26  *Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28-29 (N.D. Cal. Mar. 6,

27  2014) (approving an $8,000 incentive award for each of the three named plaintiffs).

28

The incentive awards here are also proportionate to the monetary relief provided by the Settlement Agreement. The proposed $7,500 awards are only $1,618.80 more than the average class member award of $5,881.20.  Courts have consistently approved incentive awards that were far higher in comparison to individual awards.  *See In re Capital One Tel. Consumer Prot. Act Litig.*, 2015 U.S. Dist. LEXIS 17120, at *7 (N.D. Ill. Feb. 12, 2015) (approving $5,000 service awards where class members who made timely claims were entitled to "at least $39.66"); *Lemus*, 2012 U.S. Dist. LEXIS 119026, at *2 (approving $15,000 service awards where the average class recovery was about $1,200). Moreover, Named Plaintiffs agreed to a general release of all claims they might have against Defendant, to provide declarations acknowledging the safety concerns associated with carrying radios during rest breaks, and not to oppose any future attempt by Defendant to obtain renewal of the DLSE rest break exemption, giving up additional rights. Renick Dec., ¶ 31.

Finally, the incentive awards, totaling $22,500, are only 0.4 percent of the gross settlement. This percentage is in line with those found to be acceptable in other class actions. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 463 (approving incentive award of $5,000 to two plaintiff representatives in $1.75 million settlement, comprising 0.56% of the total settlement amount); *Sandoval v. Tharaldson Employee Mgmt, Inc.*, 2010 U.S. Dist. LEXIS 69799, at *26-27 (awarding $7,5000 incentive payment to named plaintiff, comprising 1% of gross settlement amount); *Hopson* v. Hanesbrand Inc., No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *28-29 (N.D. Cal. Apr. 3, 2009)(approving $5,000 incentive award to one named plaintiff, comprising 1.25% of the settlement amount).

### E.    Final Certification of the Class for Settlement Purposes Is Proper.

The Court should reaffirm its finding at preliminary approval that certification of the class for settlement is proper under Rule 23(b)(3).  Dkt. # 39, 2:13-16.  A district court must give "'undiluted, even heightened, attention in the settlement context' to scrutinize proposed settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App. LEXIS 1626, at *36 (9th Cir. Jan. 23, 2018)(citation omitted).  While "it need not consider litigation management issues in determining whether to certify a class," a court must properly conduct the Rule 23(b)(3) predominance inquiry focused on whether common questions outweigh individual questions. *Id.* at *35-36. Here, the numerosity, commonality, typicality, and adequacy of

representation prerequisites under Rule 23(a) are met, and common questions of law and fact predominate under Rule 23(b)(3).

### 1.   The Settlement Class Satisfies the Rule 23(a) Requirements

*Numerosity*—Based on the Claims Administrator's review of the data from Defendant, the Settlement Class includes 677 members.  Schachter Dec., ¶¶ 3-4; Renick Dec., ¶40.  The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a class will benefit the parties and the Court.  *See Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000)("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

*Commonality*—To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)(citing Fed. R. Civ. P. 23(a)(2)).  "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Id.* at 981.  Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment at Phillips 66, including whether Phillips 66 failed to authorize and permit class members to take rest periods in accordance with applicable California law because it failed to relieve class members of all work duties during their rest periods.

*Typicality*—"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The claims alleged by the Named Plaintiffs arise out of the challenged practices and common course of conduct by Phillips 66 and are based on the same legal theories as the claims of the putative class members; thus, they are typical of those claims which could be alleged by any member of the proposed class.  Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

*Adequacy of Representation*—To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action

vigorously on behalf of the class.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Here, Plaintiffs assert that they are proper representatives of the proposed class because they will fairly and adequately represent and protect the interests of all putative class members as neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class.  The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class.  Renick Dec., ¶ 42.  Moreover, Plaintiffs' counsel, Hadsell Stormer & Renick, LLP and Gilbert & Sackman, A Law Corporation, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation.  Renick Decl. ¶¶ 32-38; Young Dec., ¶4.

### 2.      The Settlement Class Meets the Requirements of Rule 23(b)

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011).

*Predominance of common issues*—"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof.  Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012).  During rest periods, "employers must relieve employees of all duties and relinquish control over how employees spend their time." *Augustus*, 2 Cal. 5th at 269.  In *Augustus*, the California Supreme Court held that "an employer cannot satisfy this obligations under Wage Order 4, subdivision 12(A) while requiring the employees to remain on call." *Id.* at 270.  Plaintiffs' primary claim in this case is that Phillips 66's lack of a rest break policy or practice which authorizes and permits duty-free rest breaks and its uniform

1    failure to provide such breaks violate California law.  This issue is suitable for class adjudication

2    because it pertains to all members of the class.  *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th

3    1129, 1150 (2012)("The lack of a meal/rest break policy and the uniform failure to authorize such breaks

4    are matters of common proof.").  Plaintiffs assert that Phillips 66's defense, that it permitted employees

5    duty free rest periods, is also common to the class.  *See Lubin v. Wackenhut Corp*., 5 Cal. App. 5th 926,

6    957 (2016)(The employer's "defense that it had a policy or practice authorizing rest breaks is susceptible

7    to classwide resolution.").  Common issues, therefore, predominate over any individual issues.

8         *Superiority*—"The superiority inquiry under Rule 23(b)(3) requires determination of whether the

9    objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150

10   F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative

11   mechanisms of dispute resolution."  *Id.* at 1023.  Here, class resolution is superior to other available

12   methods for the fair and efficient adjudication of the controversy, particularly in the settlement context.

13   Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class

14   would create a risk of inconsistent and/or varying adjudications with respect to the individual members

15   of the class, establishing incompatible standards of conduct for Phillips 66, and resulting in the

16   impairment of putative class members' rights and the disposition of their interests through actions to

17   which they are not parties.  The prosecution of separate actions and individualized litigation would also

18   increase the delay and expense to all parties and the court system.  Finally, compared with other methods

19   such as intervention or the consolidation of individual actions, a class action is fairer and more efficient.

20   / / /

21   / / /

22   / / /

23

24

25

26

27

28

PLTFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGMT & PLAN OF ALLOCATION, CASE NO. 4:17-CV-00163-YGR

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and enter Judgment.

DATED:  February 20, 2018                                **HADSELL STORMER & RENICK LLP**

By: s/ Randy Renick

Attorneys for Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions

**GILBERT & SACKMAN**
**A Law Corporation**

By: s/ Joshua F. Young

Attorneys for Plaintiffs Kyndl Buzas,
Raudel Covarrubias, and Daniel Runions

Attestation Regarding Signatures:

I, Randy Renick, hereby attest that all signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.  I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

By:   /s/ Randy Renick
        Randy Renick