RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
SPRINGSONG COOPER (CA Bar No. 307845)
(Email: scooper@hadsellstormer.com)
**HADSELL STORMER & RENICK, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

*Attorneys for Plaintiffs Kyndl Buzas, Raudel Covarrubias,*
*and Daniel Runions*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYNDL BUZAS, RAUDEL COVARRUBIAS, and DANIEL RUNIONS, individually and on behalf of all similarly situated current and former employees,<br><br>                    Plaintiffs,<br><br>    v.<br><br>PHILLIPS 66 COMPANY and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. 4:17-cv-00163-YGR<br><br>**CLASS ACTION**<br><br>**[PROPOSED]** **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION**<br><br>DATE:    March 6, 2018<br>TIME:    2:00 p.m.<br>PLACE:  Oakland Courthouse, Courtroom 1 - 4th Floor<br><br>Honorable Yvonne Gonzalez Rogers |

# [PROPOSED] ORDER

Plaintiffs' Motion for Final Approval of Class Action (Dkt. No. 43) came on for hearing on March 6, 2018. The Court, having considered whether to order final approval of the settlement of the above-captioned action pursuant to the Joint Stipulation of Class Action Settlement and Release ("Settlement"), attached hereto as Exhibit 1, having read and considered all of the papers and argument of the parties and their counsel, having granted preliminary approval on December 6, 2017 (Dkt. No. 39), having directed that notice be given to all Class Members of preliminary approval of the Settlement and the final approval hearing and the right to be excluded from the Settlement, and having received no objections and for good cause appearing,

IT IS HEREBY ORDERED AS FOLLOWS:

1. All defined terms contained herein shall have the same meaning as set forth in the Stipulation executed by the Parties and filed with this Court.

2. The Court finds that certification of the following Class is appropriate:

All employees who have worked as Operators at Phillips 66's three refineries in Rodeo, Santa Maria, and Los Angeles (including the Wilmington and Carson facilities), California, from January 12, 2013, to December 6, 2017.

3. The Court hereby finds that the Notice of Settlement, as mailed to all Class Members on December 26, 2017, fairly and adequately described the proposed Settlement, the manner in which Class Members could object to or participate in the Settlement, and the manner in which Class Members could opt out of the Settlement Class; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws.

4. The Court further finds that a full and fair opportunity has been afforded to Class Members to participate in the proceedings convened to determine whether the proposed Settlement should be given final approval. Accordingly, the Court hereby determines that all Class Members who did not file a timely and proper request to be excluded from the Settlement are bound by this Order of Final Approval and the Judgment.

5. The Court hereby finds that the Settlement, including the Settlement Amount, is fair, reasonable, and adequate as to the Class, Plaintiffs and Defendant, and is the product of good faith,

arms-length negotiations between the Parties, and further, that the Settlement is consistent with public policy, and fully complies with all applicable provisions of law. The Court makes this finding based on a weighing of the strength of Plaintiffs' claims and Defendant's defenses with the risk, expense, complexity, and duration of further litigation.

6.     The Court also finds that the Settlement is the result of non-collusive arms-length negotiations between experienced counsel representing the interests of the Class and Defendant, after thorough factual and legal investigation.  In granting final approval of the Settlement, the Court considered the nature of the claims, the amounts paid in settlement, the allocation of settlement proceeds among the Class Members, and the fact that the Settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability after appeal.  Additionally, the Court finds that the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual Class Member.

7.     The Court further finds that the response of the Class to the Settlement supports final approval of the Settlement.  Specifically, no Class Members have objected to the Settlement, and only three have opted out.  Accordingly, pursuant to Rule 23(e), the Court finds that the terms of the Settlement are fair, reasonable, and adequate to the Class and to each Class Member. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

8.     The Court also hereby finds that Plaintiffs have satisfied the standards and applicable requirements for final approval of this class action settlement under Federal Rule of Civil Procedure 23, for the reasons stated in the Motion for Final Approval.

9.     The Court orders the Parties to implement, and comply with, the terms of the Settlement.

10.     The Court approves the Plan of Allocation as set forth in the Settlement Agreement.

11.     The Court approves the settlement of the Released Claims as defined in the Settlement. As of the Effective Date of the Settlement, as defined in the Settlement, all of the Released Claims of each Class Member who did not timely opt out, as well as the Class Representatives' Released Claims, are and shall be deemed to be conclusively released as against Defendant.  Except as to such rights or claims that may be created by the Settlement, all Class Members as of the date of the Order of Final

[PROPOSED] ORDER GRANTING FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT & PLAN OF ALLOCATION
Case No. 4:17-cv-00163-YGR

Approval and Judgment who did not timely opt out are hereby forever barred and enjoined from commencing or prosecuting any of the Released Claims, either directly, representatively or in any other capacity, against Defendant.

12.     Class Counsel, Hadsell Stormer & Renick, LLP and Gilbert & Sackman, shall continue to serve as Class Counsel and shall oversee and perform the duties necessary to effectuate the settlement, including the submission to the Court of the Claims Administrator's final distribution report, as well as all papers necessary to allow this court to evaluate the claims process and order distribution of the settlement fund to class members.

13.     Plaintiffs' Counsel is awarded attorney's fees in the amount of $1,375,000. The forgoing award is 25% of the settlement fund of $5,500,000. Plaintiff's Counsel is further awarded reimbursement of reasonable costs and expenses necessarily incurred in order to advance the litigation for the benefit the class in this matter in the amount of $32,760.29. These awards shall be paid from the Settlement Fund.

14.     In determining an award of attorney's fees where the class action settlement establishes a common fund for the benefit of the class out of which the attorney's fee is awarded, courts have adopted the percentage of fee calculation. *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 493–94 (2016). The Court finds that a fee award at the Ninth Circuit 25% of the fund benchmark, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), is reasonable in light of the factors to be considered, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (*citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

15.     In addition, the Court finds the fee award reasonable under the lodestar cross-check method. *Laffitte*, 1 Cal. 5th at 506; *Vizcaino*, 290 F.3d at 1043. In so finding, the Court has considered a variety of factors, including "the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

[PROPOSED] ORDER GRANTING FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT & PLAN OF ALLOCATION
Case No. 4:17-cv-00163-YGR

16. The Class Representatives, Kyndl Buzas, Raudel Covarrubias, and Daniel Runions, are each awarded an incentive award in the amount of $7,500. This payment shall be made from the Settlement Fund and is in addition to their share as a Class Member.

17. Plaintiffs may also set aside $43,424.68 from the Settlement Fund to be paid to the court-appointed Claims Administrator, A.B. Data.

18. The Court allocates $50,000 of the Settlement Fund to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) to be paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out.

19. Defendant shall have no further liability for costs, expenses, interest, attorney's fees, or for any other charge, expense, or liability, in connection with the above-captioned action except as provided in the Settlement.

20. Without affecting the finality of the Order of Final Approval or the Judgment, the Court retains exclusive and continuing jurisdiction over the Action, Plaintiffs, all Class Members and Defendant for purposes of supervising, implementing, interpreting, and enforcing the Order of Final Approval and Judgment and the Settlement. Nothing in the Order of Final Approval or Judgment precludes any action to enforce the Parties' obligations under the Settlement or under this Order of Final Approval.

This Order terminates Docket Number 43.

**IT IS SO ORDERED.**

DATED:  March 8, 2018            

HON. YVONNE GONZALEZ ROGERS
United States District Judge

[PROPOSED] ORDER GRANTING FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT & PLAN OF ALLOCATION
Case No. 4:17-cv-00163-YGR

Exhibit 1

1  JAY SMITH (CA Bar No. 166105)
   (Email: js@gslaw.org)
2  JOSHUA F. YOUNG (CA Bar No. 232995)
   (Email: jyoung@gslaw.org)
3  GILBERT & SACKMAN
   A LAW CORPORATION
4  3699 Wilshire Boulevard, Suite 1200
   Los Angeles, California 90010
5  Telephone: (323) 938-3000
   Fax: (323) 937-9139
6
   RANDY RENICK (CA Bar No. 179652)
7  (Email: rrr@hadsellstormer.com)
   CORNELIA DAI (CA Bar No. 207435)
8  (Email: cdai@hadsellstormer.com)
   HADSELL STORMER & RENICK, LLP
9  128 North Fair Oaks Avenue, Suite 204
   Pasadena, California 91103-3645
10 Telephone: (626) 585-9600
   Fax: (626) 577-7079
11
12 *Attorneys for Plaintiffs Kyndl Buzas, Raudel*
   *Covarrubias, and Daniel Runions*

13 [Additional Counsel Listed On Next Page]

14                **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16

17
   KYNDL BUZAS, RAUDEL COVARRUBIAS,          CASE NO. 4:17-cv-00163-YGR
18 and DANIEL RUNIONS, individually and on
   behalf of all similarly situated current and   **JOINT STIPULATION OF CLASS**
19 former employees,                              **ACTION SETTLEMENT AND RELEASE**

20                      Plaintiffs,

21        v.                                       Judge:  Hon. Yvonne Gonzalez Rogers

22 PHILLIPS 66 COMPANY and DOES 1 through
   10, inclusive,
23
                       Defendants.
24

25

26

27

28

CATHERINE A. CONWAY (SBN 98366)
CConway@gibsondunn.com
TIFFANY PHAN (SBN 292266)
tphan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone:  213-229-7000
Facsimile:  213-229-7520

*Attorneys for Defendant Phillips 66 Company*

**TABLE OF CONTENTS**

Page

I.      RECITALS...................................................................................................... 1

A.      Background and Procedural History  1
B.      Parties' Statements and Recognition of the Benefits of the Settlement      2
II.     DEFINITIONS ................................................................................................. 3

III.    TERMS OF SETTLEMENT AGREEMENT ...................................................... 7

A.      DISTRIBUTION OF THE SETTLEMENT FUND  7
B.      Plaintiffs Service Awards      8
C.      Attorney's Fees and Costs      9
D.      Administrative Costs  10
E.      Payment for PAGA Penalties 10
F.      No Effect on Benefits for Settlement Class Members          11
G.      Allocation      11
IV.     CLAIMS RELEASED BY SETTLEMENT AGREEMENT ................................. 13

V.      SCHEDULE FOR FINALIZING SETTLEMENT AGREEMENT ...................... 14

A.      Seeking Preliminary Approval of Settlement Agreement      15
B.      Providing Class Data to Claims Adminstrator          16
C.      Settlement Notice      16
D.      Objections to Settlement Agreement after Preliminary Approval     19
E.      Duties of the Parties in Connection with Final Court Approval      20
F.      Timing and Manner of Payments      20
G.      Payroll Deductions, Union Dues, and Taxes 22
VI.     OTHER PROVISIONS ..................................................................................... 23

A.      Voiding the Settlement Agreement      23
B.      Notices      23
C.      Mutual and Full Cooperation  24
D.      No Admission of Liability      24
E.      Binding Nature of Settlement Agreement      25
F.      Dispute Resolution      26
G.      Restriction on Publicity      26
H.      Governing Law and Joint Drafting of Settlement Documents          26
I.      Counterparts  26
J.      Execution of Settlement Agreement  27
K.      Parties' Authority      27

Plaintiffs Kyndl Buzas, Raudel Covarrubias, and Daniel Runions, individually and on behalf of all similarly situated current and former employees (collectively "Plaintiffs"), and Defendant Phillips 66 Company ("Defendant") (collectively, the "Parties"), subject to the terms and conditions hereof and final approval by the Court, hereby enter into this Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"). This Settlement Agreement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this settlement.

## I. RECITALS

A. **Background and Procedural History**

1. Plaintiffs commenced the Action by filing a complaint against Defendant in *Kyndl Buzas, et al., v. Phillips 66 Co.*, Case No. 4:17-cv-00163-YGR, in the Northern District of California on January 12, 2017. N.D. Cal. Case No. CV-14-00163, ECF No. 1 (the "Complaint"). Plaintiffs' lawsuit is based on the California Supreme Court's December 22, 2016 interpretation of Wage Order No. 4-2001 in *Augustus v. ABM Securities Services, Inc.*, 2 Cal. 5th 257, 260 (2016) ("*Augustus*"), that rest periods under that wage order cannot be "on call." Plaintiffs contend that Defendant requires refinery operators to maintain radios during rest breaks in violation of the California Supreme Court's rest break interpretation.

2. Plaintiffs allege that Defendant violated California's wage and hour laws by not providing them with rest breaks, by failing to pay them premium wages for missed rest breaks, and by failing to provide accurate wage statements. In addition to alleging violations of the California Labor Code, Plaintiffs also have asserted claims under California Business & Professions Code section 17200 and the Labor Code Private Attorneys General Act of 2004 ("PAGA"), California Labor Code section 2698 et seq., based on the same alleged Labor Code violations. Plaintiffs seek to represent a class of all persons employed by Defendant as an operator at the Phillips 66 Company refineries in Los Angeles, Santa Maria, and Rodeo, California, since January 12, 2013.

3. Plaintiffs served the Complaint on February 2, 2017 and filed a First Amended Complaint on May 12, 2017.

4. Defendant was granted a DLSE exemption from the California Supreme Court's

interpretation of rest breaks in *Augustus* effective from May 22, 2017 through January 31, 2019 ("DLSE Exemption").

5. On March 17, 2017, the Parties participated in mediation with David Rotman and agreed to further mediation on June 20, 2017.

B. **Parties' Statements and Recognition of the Benefits of the Settlement**

6. This litigation arises out of the California Supreme Court's interpretation of rest breaks in *Augustus*, which in part, held that rest periods under Wage Order No. 4-2001 cannot be "on call." Plaintiffs have contended that this interpretation applies to Wage Order No. 1-2001, which is applicable to operators employed by Defendant at refineries in Los Angeles, Santa Maria, and Rodeo, California. Defendant has asserted to the DLSE, along with the support of the United Steelworkers union on behalf of Local 326, Local 534, and Local 675, that requiring employees to turn off radios during rest breaks could have adverse effects on the overall welfare of employees on breaks and employees in the surroundings. As a result, the DLSE has granted Defendant an exemption from the California Supreme Court's interpretation of rest breaks in *Augustus*. Plaintiffs agree that there are safety concerns associated with turning radios off during rest breaks.

7. Class Counsel has conducted extensive investigation into the facts of the Class Action, including informal disclosures and other investigation undertaken by counsel for Plaintiffs. Class Counsel is aware of Phillips 66 Company's practices and procedures from disclosures made in prior litigation. Furthermore, the Parties engaged in extensive negotiations and the exchange of data, documents, and information. Based on a thorough investigation and evaluation of this case, Class Counsel and Plaintiffs have concluded that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement, is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues.

8. Defendant denies each and all of the claims alleged by Plaintiffs in the Class Action. Defendant expressly denies any and all charges of wrongdoing or liability arising out of any of the acts, omissions, facts, matters, transactions, or occurrences alleged, or that could have been alleged, in the Class Action. Nevertheless, Defendant has taken into account the uncertainty and risks

inherent in any litigation and has also concluded that further conduct of the instant action would be protracted and expensive. Defendant, therefore, has determined that it is desirable and beneficial that the instant action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement. Neither this Settlement Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or may be used as an admission, concession, or indication by or against Defendant of any fault, wrongdoing or liability whatsoever.

## II.    DEFINITIONS

9.     "Administrative Costs" shall mean the estimated cost for administering the settlement and claims process, including providing the Notice of Settlement, various efforts to locate Settlement Class Members, and coordinating the payment of claims on behalf of the Settlement Class.

10.     "Attorney's Fees and Costs" shall mean the amount to be paid to Class Counsel under the terms of this Settlement Agreement.

11.     "Claims Administrator" shall mean AB Data, 600 A.B. Data Drive • Milwaukee, WI 53217 , which is the entity that has been selected to provide notice of this proposed class action settlement to the Settlement Class and to perform other related functions to administer the settlement contemplated by this Settlement Agreement as described herein.

12.     "Class Action" or "Lawsuit" shall mean the civil action entitled KYNDL BUZAS, RAUDEL COVARRUBIAS, and DANIEL RUNIONS, individually and on behalf of all similarly situated current and former employees, v. PHILLIPS 66 COMPANY, Case NO. 4:17-cv-00163-YGR.

13.     "Class Counsel" shall mean the attorneys representing Plaintiffs in the Class Action: Randy Renick and Cornelia Dai of Hadsell Stormer & Renick, LLP and Jay Smith and Joshua F. Young of Gilbert & Sackman, a Law Corporation.

14.     "Class Period" shall mean January 12, 2013, to the date of the Order Granting Preliminary Approval ("Preliminary Approval"), inclusive.

15.     "Claims Released" shall mean those claims contained in the Complaint, including the original complaint filed in the Class Action (and claims derivative thereof) and First Amended

Complaint filed on May 12, 2017, including, but not limited to, the failure to provide an off-duty rest period, failure to furnish timely and accurate wage statements arising from the failure to provide rest periods, all claims in connection with rest periods arising under the California Labor Code, California Industrial Welfare Commission Wage Order 1-2001, and California's Unfair Competition Law, all claims for civil penalties in connection with rest periods and inaccurate wage statements arising under PAGA, all claims for attorneys' fees and costs arising from the prosecution of rest period claims, all claims for restitution, disgorgement, and injunctive relief, and all other claims as fully described in greater detail in Paragraphs 49-53.

16.     "Credit" shall mean a Qualifying Shift, as defined below, for the time period of January 12, 2013 to May 22, 2017, worked by all Class Members

17.     "Defense Counsel" shall mean the attorneys representing Defendant in the Class Action: Catherine A. Conway and Tiffany Phan of Gibson, Dunn & Crutcher LLP.

18.     "Final Approval Hearing" means the hearing to be conducted by the Court, or any other court taking jurisdiction of this matter, to determine whether to finally approve the Settlement.

19.     The "Effective Date" of this Settlement Agreement shall mean seven (7) calendar days after *all* of the following conditions have been satisfied:

      i.     Execution of this Settlement Agreement by all Parties, Class Counsel and Defense Counsel;

      ii.     Submission of this Settlement Agreement to the Court, along with appropriate motions and requests for approval of this Settlement Agreement by the Court;

      iii.     Preliminary approval of the settlement by the Court;

      iv.     Mailing of the Notice of Settlement to the Settlement Class Members in accordance with the Court's Order of Preliminary Approval;

      v.     Expiration of the opt-out date as defined in the Notice of Settlement;

      vi.     Five percent (5%) or fewer of the Settlement Class Members submit timely and valid requests to opt out of the Settlement Class (or if more than five percent (5%) opt out, Defendant does not exercise its right to rescind and void the Settlement Agreement);

vii. A formal fairness hearing, final approval of the settlement by the Court, and entry of a written final order by the Court approving this Settlement Agreement and entering final judgment with respect to the Class Action. Except that, in the event there are written objections made prior to the formal fairness hearing, or an appeal of the Court's approval of the settlement taken, then the Effective Date shall be the later of the following events: when the period for filing any appeal, writ or other appellate proceeding opposing the settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or any appeal, writ or other appellate proceeding opposing the settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief.

viii. Named Plaintiffs' execution of General Releases referenced below.

ix. Named Plaintiffs' execution of a declaration acknowledging the safety concerns associated with maintaining radios on during rest breaks.

9. The occurrence of the Effective Date is a prerequisite to any distributions from the Settlement Fund.

10. In the event that the Court does not execute an Order of Final Approval, or any such Order of Final Approval does not become final for any reason, or is modified in any material respect, the Effective Date does not occur, or that any of the conditions set forth above do not occur, this Settlement Agreement shall be deemed null and void and shall be of no force or effect whatsoever, and shall not be referred to or utilized for any purpose whatsoever.

11. "Order of Final Approval" and "Final Approval" means an order that finally and unconditionally grants final approval of this Settlement Agreement, enters final judgment with respect to the Class Action, and authorizes payments to the Claims Administrator, the Settlement Class Members, and Class Counsel as provided in this Settlement Agreement.

12. "Order Granting Preliminary Approval" and "Preliminary Approval" refers to the Court order or statement of decision granting preliminary approval to this Settlement Agreement.

13.　　"Named Plaintiffs" shall mean Kyndl Buzas, Raudel Covarrubias, and Daniel Runions.

14.　　"Notice of Settlement" refers to the official notice of settlement of class action, attached hereto as Exhibit A.

15.　　"Released Parties" shall mean Defendant Phillips 66 Company, including each of its past and present successors, subsidiaries, parents, holding companies, sister and affiliated companies, divisions and other related entities, as well as the successors, predecessors, shareholders, subsidiaries, investors, parent, sister and affiliated companies, officers, directors, partners, assigns, agents, employees, principals, heirs, administrators, attorneys, vendors, accountants, auditors, consultants, fiduciaries, insurers, reinsurers, employee benefit plans, and representatives of each of them, both individually and in their official capacities, past or present, as well as all persons acting by, through, under or in concert with any of these persons or entities.

16.　　"Service Award" shall mean a Court-approved sum to be paid to the Plaintiffs in accordance with Section III. B.

17.　　"Settlement Class" or "Settlement Class Members" shall mean: all employees who have worked as Operators at Phillips 66's three refineries in Rodeo, Santa Maria, and Los Angeles (including the Wilmington and Carson facilities), California, from January 12, 2013, to the date of Preliminary Approval.

18.　　"Settlement Fund" refers to the gross settlement amount of five million and five hundred thousand dollars ($5,500,000), which is the total and maximum amount Defendant will be required to pay under this settlement, except that Defendant will pay its share of any payroll taxes (FICA and FUDA) in addition to the Settlement Fund. The Settlement Fund will include the following elements: (i) payments to Settlement Class Members, as described herein; (ii) payment to the State of California Labor and Workforce Development Agency ("LWDA") under PAGA, as described herein; (iii) Enhancement Awards to the Named Plaintiffs, as described herein; (iv) Class Counsel's Attorneys' Fees and Costs, as described herein; and (v) Administrative Costs, as described herein.

19.　　"Qualifying Shift" shall mean a continuous, rotating 12-hour shift worked by a

Settlement Class Member as an Operator at a Phillips 66 petroleum refinery located in Los Angeles, Santa Maria, or Rodeo, California between January 12, 2013 and May 22, 2017, inclusive.

### III.  TERMS OF SETTLEMENT AGREEMENT

20.     IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs (for themselves and the Settlement Class) and Defendant, by and through their respective attorneys, that, subject to the approval of the Court, the Class Action will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice as to Defendant, subject to the terms and conditions of this Settlement Agreement, as follows:

A.     **DISTRIBUTION OF THE SETTLEMENT FUND**

21.     In consideration for settlement of the Class Action and the release of claims of the Settlement Class, Defendant agrees to pay the sum of five million and five hundred thousand dollars ($5,500,000)(the "Settlement Fund").  Any Administrative Costs, Attorney's Fees and Costs, payment to the LWDA under PAGA, and Service Awards for the Named Plaintiffs shall be deducted from the Settlement Fund.  The Settlement Fund is the maximum total amount Defendant is required to pay for any and all purposes under this Settlement Agreement, except that Defendant will pay its share of any payroll taxes (FICA and FUDA) in addition to the Settlement Fund.

22.     This is a non-reversionary settlement in which Defendant is required to pay the entire gross settlement amount, which includes the Net Settlement Proceeds, the Enhancement Awards for the Named Plaintiffs, LWDA payment, Administrative Costs, and Attorney's Fees and Costs.  No portion of the Settlement Fund will revert to Defendant.

23.     Within ninety (90) calendar days of the Order Granting Preliminary Approval Defendant will wire the Settlement Fund of five million and five hundred thousand dollars ($5,500,000), which shall immediately be deposited by the Claims Administrator into an interest-bearing account under Internal Revenue Code §1.468B-1.

24.     The Parties have agreed to the appointment of AB Data, 600 A.B. Data Drive • Milwaukee, WI 53217 to serve as the Claims Administrator for the purpose of administering the settlement and claims process.

## B. **Plaintiffs Service Awards**

25.     In addition to the amounts determined to be due to the Named Plaintiffs as Participating Settlement Class Members under this Settlement Agreement, Class Counsel and Plaintiffs intend to apply to the Court for Service Awards for Named Plaintiffs, in the total amount of no more than seven thousand and five hundred dollars ($7,500) per person.  Plaintiffs request an enhancement for the Named Plaintiffs' roles in prosecuting the Class Action, taking the risks of serving as the named representatives, providing factual information and documentation necessary to the prosecution of the Class Action, attending multiple mediation sessions, providing a General Release of all claims, maintaining contact with Class Counsel, and other participation necessary to the successful prosecution of the Class Action.  Any such motion shall be filed concurrently with Class Counsel's application for Attorneys' Fees and Costs.  Any Service Award approved by the Court in conjunction with the Settlement shall be paid from the Settlement Fund and shall reduce the amount of the Net Settlement Fund payable to the Participating Settlement Class Members.  Defendant will not oppose a request up to $7,500 per Named Plaintiff for a Service Award.

26.     In exchange for this Service Award, the Named Plaintiffs agree not to publicize the settlement beyond what is required or expressly approved by the Court, agree to respond to any inquiry regarding the settlement only by referring the inquiry to Class Counsel and saying nothing further, agree to execute a declaration acknowledging the safety concerns associated with maintaining radios on during rest breaks, and agree to execute a General Release as to any and all claims they might have against Defendant and the Released Parties, whether such claim is known or unknown, in the form attached hereto as Exhibit B, such form to be executed after final approval of settlement by the Court in order to obtain approval of the settlement.  Named Plaintiffs may, however, discuss the settlement with Class Members prior to the Effective Date in order to obtain approval of the settlement.  Named Plaintiffs agree to not oppose or encourage opposition to any subsequent attempt by Defendant to obtain rewnewal of the DLSE Exemption, provided the exemption sought does not differ substantially.  In addition Named Plaintiffs agree to cooperate in Defendant's efforts to obtain a legislative solution to the on-call rest break issue at the Califonia refineries.

27.     In the event that the Court denies, modifies, or reduces any request for a Service

Award, Plaintiffs, Class Counsel, and the Participating Settlement Class Members may not seek to modify, revoke, cancel, terminate, or void this Settlement Agreement and will not seek, request, or demand an increase in the Settlement Amount.

28. If Plaintiffs appeal the Court's ruling on Plaintiffs' request for a Service Award for Named Plaintiffs, any ruling of any appellate court in such an appeal (regardless of its substance) shall not constitute a material alteration of this Settlement Agreement, and shall not give Plaintiffs, Class Counsel, or the Participating Settlement Class Members the right to modify, revoke, cancel, terminate, or void this Settlement Agreement.

29. Notwithstanding the above, the Named Plaintiffs shall receive payment of Service Awards only after executing and delivering to Defendant this Settlement Agreement, a declaration acknowledging the safety concerns associated with maintaining radios on during rest breaks, a separate General Release of all known and unknown claims against Defendant and the Effective Date has passed.

C. **Attorney's Fees and Costs**

30. Class Counsel may request a reasonable award of attorneys' fees and costs from the Court, and will compensate Class Counsel for fees and costs incurred for work already performed in this Action, and the work remaining to be performed in documenting the Settlement Agreement, securing Court approval of the Settlement Agreement, administering the Settlement Agreement, obtaining dismissal of the Action with prejudice, and defending against any appeals, as well as all associated expenses. The amount awarded to Class Counsel shall be left to the discretion of the Court. Defendant will not oppose a reasonable request for attorneys' fees and costs.

31. Class Counsel will submit an application for Attorneys' Fees and Costs to the Court for approval prior to the date of the Final Fairness Hearing. The Parties agree that, over and above the total amount of court-approved Attorneys' Fees and Costs award in this Lawsuit, each of the Parties, including all persons eligible to be members of the Settlement Class, shall bear their own fees and costs relative to the investigation, filing, prosecution or settlement of the Lawsuit, the negotiation, execution, or implementation of this Settlement Agreement, and/or the process of obtaining, administering or challenging a Class Certification Order and/or Final Approval.

32. The Parties agree that Class Counsel shall be solely responsible for the division and distribution of any and all Court-approved Attorneys' Fees and Costs awarded in the Class Action to Class Counsel, and that Class Counsel agree to release Phillips 66 and the Released Parties from any responsibility for or liability arising out of or related to the division and distribution of any Court-approved Attorneys' Fees and Costs to Class Counsel.

33. In the event that the Court denies, modifies, or reduces Class Counsel's request for Attorneys' Fees and Costs, then Plaintiffs, Class Counsel, and the Participating Settlement Class Members may not seek to modify, revoke, cancel, terminate, or void this Settlement Agreement and will not seek, request, or demand an increase in the Settlement Amount.

34. If Class Counsel appeal the Court's ruling on their request for Attorneys' Fees and Costs, any ruling of any appellate court in such an appeal (regardless of its substance) shall not constitute a material alteration of this Settlement Agreement, and shall not give Plaintiffs, Class Counsel, or the Participating Settlement Class Members the right to modify, revoke, cancel, terminate, or void this Settlement Agreement.

35. All claims for attorneys' fees or costs or expenses that Class Counsel, Plaintiffs, and the Participating Settlement Class Members may possess against Defendant have been compromised and resolved in this Settlement Agreement and shall not be affected by any appeal that Class Counsel may file.

D. **Administrative Costs**

36. The Administrative Costs associated with administering the settlement and claims process shall be deducted from the Settlement Fund. The Administrative Costs are estimated to be $50,000. No fewer than ten court days prior to the Final Approval Hearing, the Claims Administrator shall provide the Court and all counsel for the Parties with a statement detailing the Administrative Costs. The Parties agree to cooperate in the settlement administration process and to make all efforts to control and minimize the costs and expenses incurred in the administration of this Settlement.

E. **Payment for PAGA Penalties**

37. The total amount of the Settlement Fund allocated to PAGA penalties shall be fifty thousand dollars ($50,000), with seventy-five percent (75%) of the PAGA penalties, thirty-seven

thousand and five hundred dollars ($37,500), being paid to the California Labor and Workforce

Development Agency ("LWDA") and twenty-five percent (25%) of the PAGA penalties, twelve

thousand and five hundred dollars ($12,500), being paid to the aggrieved employees (who are those

Settlement Class Members who do not opt out).

38.    The amount of the Settlement Fund being paid to aggrieved employees for PAGA

penalties will be allocated in the manner of and as part of the Net Settlement Proceeds, as set forth in

Section I.G.

39.    Pursuant to California Labor Code § 2699(l)(2), settlement of a PAGA action must be

approved by the Court and a copy of the proposed settlement will be provided to the LWDA at the

same time that it is submitted to the Court.

F.    **No Effect on Benefits for Settlement Class Members**

40.    Plaintiffs agree, on behalf of all Settlement Class Members, that this Settlement

Agreement and any payments under this Settlement Agreement shall not have any effect on the

eligibility or calculation of employee benefits with respect to the Settlement Class Members.  This

Settlement Agreement does not represent any modification of any previously credited hours of

service, income, or other eligibility criteria under any employee pension benefit plan, employee

welfare benefit plan, or other program or policy sponsored by the United Steelworkers union and/or

any of the Released Parties.

41.    Likewise, Plaintiffs agree, on behalf of all Settlement Class Members, that no payment

provided under this Settlement Agreement shall be considered "compensation" or "annual earnings

for benefits" in any year for purposes of determining eligibility for, or benefit accrual within, any

employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored

by the United Steelworkers Union and/or any of the Released Parties.

G.    **Allocation**

42.    The "Net Settlement Proceeds" shall equal the Settlement Fund minus the total of (i)

court-approved Attorneys' Fees and Costs; (ii) court-approved Service Awards to the Named

Plaintiffs; (iii) all fees, costs, and expenses of the Claims Administrator in connection with the

settlement and claims administration services including, without limitation, those connected with

providing notice to the members of the Settlement Class and making settlement distributions to members of the Settlement Class; and (iv) payment to the LWDA for PAGA penalties.

43.     The Net Settlement Proceeds shall be allocated as follows for the each member of the Settlement Class: A Credit will be given to each Qualifying Shift worked by a member of the Settlement Class for the time period of January 12, 2013 to May 22, 2017, inclusive.  Any Settlement Class Member who has no Qualifying Shifts or fewer than twenty-five (25) qualifying shifts shall be rounded up to receive at least twenty-five (25) Credits.

44.     The value of each Credit ("Credit Value") equals the Net Settlement Proceeds divided by the total number of Credits for all Class Members.

45.     Each Settlement Class Member's "Individual Settlement Award" shall equal that individual's total number of Credits multiplied by the Credit Value.  The Claims Administrator will pay out all Settlement Class Members on a confidential basis and issue IRS tax forms.

46.     Each Class Member's Individual Settlement Award will be allocated as follows: forty percent (40%) to unpaid wages which will be reported to the IRS on Form W-2; thirty percent (30%) to penalties and thirty percent (30%) to interest, which will be reported to the IRS on Form 1099.

47.     Each party, Plaintiffs, and Settlement Class Member will be responsible for his, her, or its own tax obligations.  The payment by Defendant pursuant to this Agreement is for alleged failure to pay compensation due, interest on the compensation sum, penalties regarding the compensation sum, and all other claims as set forth in the Complaint.  In accordance with both State and Federal tax laws, the Administrator shall withhold such sums from each Settlement Class Member's Individual Settlement Award as is required in order to comply with the same.  Portions of any Individual Settlement Award not subject to withholding will be issued with a 1099 Form.  After appropriate tax withholding from Individual Settlement Awards, the net payment to be received by each Settlement Class Member as required by law via a W-2 Form, the Claims Administrator shall immediately pay over all such withheld funds to the appropriate state and federal taxing authorities.  In addition, deductions shall be made from each check for union dues to the United Steelworkers Union pursuant to the United Steelworkers International Constitution, Section XIV, Section 17, for "lump sum" payments.  The Claims Administrator shall provide each Settlement Class Member with appropriate

documentation setting forth the amount of any tax, union dues, or other payment withheld, and employer contribution made, in accordance with state and federal tax requirements.

48.    The Claims Administrator will notify Defendant of the amount of the employer share of FICA and FUDA due and owing as to each Class Member which the Defendant will pay separately and in addition to the Settlement Fund. The Claims Administrator will also give Defendant an estimate of the employer's share of taxes within five (5) calendar days of sending out the Settlement Notice, as described in Paragraph 62.

## IV.    CLAIMS RELEASED BY SETTLEMENT AGREEMENT

49.    In exchange for the payments by Defendant as described herein, upon the final approval by the Court of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, the Settlement Class and each member of that class, including the Named Plaintiffs (who shall not opt out), jointly, severally, shall, and hereby do fully release and discharge Defendant and Released Parties from any and all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, occurring up to the execution of this Settlement Agreement and arising out of the dispute which is the subject of the Class Action or which could have been asserted in the Class Action based on the facts alleged, whether in contract, violation of any state or federal statute, rule or regulation, arising out of, concerning or in connection with any act or omission alleged in the Class Action by or on the part of Released Parties, including, without limitation, those relating to the failure to provide rest periods, inaccurate wage statements, penalties relating to the failure to provide rest periods and/or inaccurate wage statements, including PAGA penalties, or other alleged wage and hour violations and related record-keeping requirements, including, without limitation, violation of Business & Professions Code section 17200, the applicable California Industrial Welfare Commission Order, or any other California or federal laws relating to the failure to pay wages and penalties based on the facts alleged in the Complaint from January 12, 2013, through the Effective Date. ("Claims Released"). Claims Released include any unknown claims that members of the

Settlement Class do not know or suspect to exist in their favor, which if known by them, might have affected this Settlement Agreement with Defendant and release of Released Parties. The Claims Released do not include any workers' compensation claims, claims for physical bodily harm, discrimination claims, or any other claims not directly related to the Claims Released.

50. The Parties intend that this Settlement Agreement shall be binding on all non-opt-out members of the Settlement Class, whether or not they actually receive a payment pursuant to this Settlement Agreement. This Settlement Agreement shall constitute, and may be pleaded as, a complete and total defense to any Claims Released if raised in the future.

51. Settlement Class Members waive any right they may have to missed rest periods, wage statement penalties, other claims alleged in the Complaint, or any other matter alleged in or related to the allegations in the Complaint, including claims arising from or based upon unpaid wages, penalties, or attorneys' fees in any way relating to the matters raised in the Complaint, except as provided for in this Settlement Agreement.

52. The Named Plaintiffs and the Settlement Class may hereafter discover facts in addition to or different from those they may now know or believe to be true with respect to the subject matter of the Claims Released, but, upon the Effective Date, they shall be deemed to have, and by operation of the Order Granting Final Approval of the settlement in the Class Action shall have fully, finally, and forever settled and released any and all of the Claims Released, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is intentional, negligent, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

53. The Parties agree that, for any claim that is not alleged in the Complaint and the First Amended Complaint, the statute of limitations has and will continue to run on those claims and no such claims will relate back to the filing of any of the pleadings in this Action.

## V. SCHEDULE FOR FINALIZING SETTLEMENT AGREEMENT

54. Plaintiffs and Defendant stipulate and agree to the following schedule and procedures

for obtaining the Court's approval of the settlement, including seeking certification of the Settlement Class, notifying the Settlement Class, and processing all benefits provided under this Settlement Agreement:

A.     **Seeking Preliminary Approval of Settlement Agreement**

55.     Upon the execution of this Settlement Agreement, Plaintiffs will move the Court for (a) conditional certification of the Settlement Class as a Rule 23 settlement class; (b) preliminary approval of the terms of this Settlement Agreement, (c) approval of the Notice of Settlement (the "Settlement Notice"), settlement notice procedure, and appointment of the Claims Administrator, and (d) the scheduling of a settlement fairness hearing on the question of whether the terms of this Settlement Agreement should be finally approved as fair, reasonable, and adequate as to the Named Plaintiffs and the Settlement Class (collectively, "Motion for Preliminary Approval"). As a part of this motion, Plaintiffs will submit (and attach copy of) this Settlement Agreement.

56.     Class Counsel shall provide Defendant with a reasonable opportunity to review, and provide comments to the Motion for Prelimnary Approval , before the motion and supporting papers are filed with the Court.

57.     Solely for settlement purposes, Plaintiffs agree to seek, and Defendants consents to, certification by the Court of the Settlement Class as a Rule 23 settlement class.

58.     The conditional certification of the Settlement Class and appointment of Class Counsel by the Court shall be binding only with respect to the settlement of this Action. In the event that this Settlement Agreement is cancelled pursuant to its terms, the certification of the Settlement Class shall be vacated, the Action shall proceed as though the Settlement Class had never been certified, and this Settlement Agreement shall be of no force or effect.

59.     Defendant shall not oppose the Motion for Preliminary Approval filed by Class Counsel pursuant to this Settlement Agreement, so long as the motion and supporting papers are consistent with the terms of this Settlement Agreement.

60.     Within ten (10) days after the filing of the Motion for Preliminary Approval, Defendant shall comply with the "Notification of Settlement" requirements of the Class Action Fairness Act (28 U.S.C. § 1715). Defendant shall provide Class Counsel with a copy of the notices provided to the

appropriate state officials, as defined under 28 U.S.C. § 1715. Prior to the date set for the preliminary approval hearing, Defendant shall file a proof of service with the Court indicating compliance with 28 U.S.C. § 1715.

B. **Providing Class Data to Claims Adminstrator**

61. Within twenty-one (21) calendar days of the Order Granting Preliminary Approval, Defendant agrees to provide to the Claims Administrator a "class list" and the following information for each Class Member: (a) name; (b) last-known address; (c) e-mail address, if available; (d) social security number or employee identification number; (e) work site(s) where he or she was employed by Defendant during the Class Period; (f) number of Qualifying Shifts worked from January 12, 2013, to the date of Preliminary Approval; (g) number of Qualifying Shifts worked during each calendar year during the Class Period. The Claims Administrator will then have an opportunity to review the data provided by Defendant to verify the accuracy of the information and to calculate the Credit Value, each class member's Credits and projected individual payment. If numerous and/or substantial inconsistencies or inaccuracies are discovered at any point, the Parties agree to jointly apply to the Court for an extension of the schedule provided herein to allow the Parties to resolve the inconsistencies or inaccuracies. The above-described information will be provided to Claims Administrator on a confidential basis, and the Claims Administrator agrees to use this information only for purposes of verifying the accuracy of the information. The Claims Administrator agrees not to use the information for any purpose other than the administration of the settlement of the Class Action, and agrees not to disclose the information to any third party. Notwithstanding the foregoing, the Claims Administrator may disclose to Class Counsel the number of Qualifying Shifts worked by Settlement Class Members.

C. **Settlement Notice**

62. If the Court grants Preliminary Approval of the settlement terms described in this Settlement Agreement, a Settlement Notice shall be provided to the Settlement Class as follows:

a. Fourteen (14) calendar days after Defendant provides to the Claims Administrator the class list referenced in Paragraph 61 the Claims Administrator shall send a Settlement Notice to all members of the Settlement Class by regular U.S. Mail,

postage prepaid and supplement with e-mail notice, if feasible. In order to provide the best notice practicable, any Settlement Notice returned as undelivered shall be sent to the forwarding address affixed thereto, if any. If no forwarding address is provided for a Settlement Notice that is returned as undelivered, the Claims Administrator will use a reliable computer search method to locate a current address. If no current address is located, the Settlement Notice for that individual will be deemed undeliverable. If the procedures herein are followed, Defendant, Class Counsel, and the Claims Administrator shall be deemed to have satisfied their obligation to provide the Settlement Notice to the Settlement Class. A copy of the proposed Settlement Notice is attached hereto as Exhibit A.

b.     The Settlement Notice shall, at a minimum, include the following: the number of Qualifying Shifts worked by the Settlement Class Member, the amount the class member can expect to recerive based on the number of qualifying shifts, the contact information for Class Counsel and Defense Counsel, information informing Settlement Class Members of their right to opt out, a statement that the Settlement Agreement may have preclusive effect and participation in the Settlement shall result in a release of Released Claims, notification that Settlement Class Members are solely responsible for determining the tax consequences of payments made pursuant to this Settlement Agreement; and notification that any payments under this Settlement Agreement shall not have any effect on the eligibility or calculation of employee benefits nor will it be considered compensation for determining eligibility in any employee pension benefit plan, as discussed *ante* in Section II. F.

c.     The Settlement Notice shall inform Settlement Class Members of their right to opt out of the Settlement Class and be excluded from receiving any benefits under the Settlement Agreement by completing and mailing a written opt-out request to the Claims Administrator no later than forty-five (45) calendar days after the postmark date of the Settlement Notice. Any member of the Settlement Class who submits a timely and valid request for exclusion will receive no settlement payment and will not

be bound by the terms of the Settlement Agreement nor have any right to object, appeal, or comment thereon. Late-submitted opt-out requests will not be accepted by the Claims Administrator and shall not be effective. The Claims Administrator will certify jointly to Class Counsel and Defense Counsel which requests for exclusion were valid and timely submitted.

d.      If a member of the Settlement Class disagrees with the number of Qualifying Shifts, the member must complete and send a notice of dispute to the Claims Administrator, together with any supporting written documentation. Such documentation may consist of official records, pay stubs, weekly schedules, or personal logs. To be considered, the notice of dispute and supporting written documentation must be received by the Claims Administrator no later than thirty (30) calendar days after the postmark date of the Settlement Notice.

e.      The Claims Administrator shall immediately notify both Class Counsel and Defense Counsel of any disputes submitted by Settlement Class Members. The Claims Administrator shall share with both Class Counsel and Defense Counsel the notice of dispute and any documentation submitted by a Settlement Class Member in support of his or her dispute. The Claims Administrator shall make the final determination regarding the dispute based on the written documentation submitted by the Settlement Class Member and any materials submitted by counsel within ten (10) calendar days of receipt of the notice of dispute and supporting written documentation, or no later than forty (40) calendar days after the postmark date of the Settlement Notice. The Claims Administrator shall inform each Settlement Class Member of the final determination by a telephone call, followed by an e-mail or regular U.S. Mail if no email for that Settlement Class Member is available.

f.      The Claims Administrator shall create and maintain a website, which will include links to the Class Notice, Motions for Preliminary and Final Approval and Motion for Attorney's Fees as they become available, until the Effective Date. The website shall also include links to any other documents or information the Claims

Administrator deems necessary to perform its duties. The Motion for Attorney's Fees and any related filings shall be available on the website for a reasonable period of time of no less than 14 calendar days prior to the deadline for class members to file an objection to the Settlement Agreement.

g. At least twenty-one (21) calendar days before the Final Fairness Hearing, the Claims Administrator shall prepare a declaration of due diligence and proof of mailing with regard to the mailing of the Settlement Notice and e-mail (if e-mail was deemed feasible), and any attempts by the Claims Administrator to locate the members of the Settlement Class ("Due Diligence Declaration"), to Class Counsel and Defense Counsel for presentation to the Court. The Claims Administrator will attach to the Due Diligence Declaration a report showing the name of each individual who submitted a timely and valid opt-out. Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

h. If at any point the Claims Administrator determines that it needs additional time, the Claims Administrator shall inform the Parties regarding the situation, and the Parties will seek from the Court a modification of the schedules contained in this Settlement Agreement or any Court Order, to be consistent with the recommendations and requests of the Claims Administrator. However, the Claims Administrator shall not make a request for a time modification if the need for additional time is a result of any party failing to provide information as required in this Settlement Agreement on a timely basis. If a Party fails to provide required information according to this schedule, any other Party reserves the right to seek the Court's intervention to ensure compliance with the agreed terms of this Settlement Agreement.

D. **Objections to Settlement Agreement after Preliminary Approval**

63. Any Settlement Class Member who intends to object to the settlement or this Settlement Agreement must submit a written objection, along with any supporting documents, to the Court, no later than forty-five (45) calendar days after the postmark date of the Settlement Notice by mailing it to or filing it in person with the Court. The written objection must set forth, in clear and

concise terms, the legal and factual arguments supporting the objection.

64.     Members of the Settlement Class who fail to make objections in the manner specified in Paragraphs 63-66 shall be deemed to have waived any and all objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement or this Settlement Agreement.

65.     Settlement Class Members who timely submit a written objection have the option to appear at the Final Approval Hearing, either in person or through their own counsel. To appear, Class Members must include a statement about the intent to appear at the Final Approval Hearing ("Notice of Intention to Appear") in the objection.  No member of the Settlement Class shall be entitled to be heard at the Final Approval Hearing unless the Class Member includes the Notice of Intention to Appear, without permission of the Court.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

66.     The filing of an objection allows Class Counsel or Defense Counsel, upon reasonable notice, to take the deposition of the objecting Settlement Class Member, and to seek any documentary evidence or other tangible things that are relevant to the objection.  Failure by the Settlement Class Member to make himself or herself available for a deposition or comply with expedited discovery requests may result in the Court striking the Settlement Class Member's objection and otherwise denying him or her the opportunity to make an objection or be further heard.

E.     **Duties of the Parties in Connection with Final Court Approval**

67.     In connection with final approval by the Court of this Settlement Agreement, Class Counsel and Defense Counsel will submit a proposed Judgment and a proposed Order Granting Final Approval of Class Action Settlement: approving the settlement, adjudicating the terms thereof to be fair, reasonable, and adequate, and directing consummation of all terms and provisions as provided in this Settlement Agreement.

F.     **Timing and Manner of Payments**

68.     Within twenty-one (21) calendar days after either Preliminary Approval of the Settlement or after Defendant receives an election statement from the Claims Administrator,

whichever is later, Defendant shall execute the election statement provided by the Administrator which shall be affixed to the initial tax return of the Qualified Settlement Fund in order to establish the start date of the Qualified Settlement Fund. The gross settlement amount shall thereafter be administered and distributed as set forth in this Agreement. All interest with respect to the gross settlement amount shall accrue to the benefit of the Settling Class. The monetary relief to the Settling Class, all fees and expenses of the Settlement Administrator, and any and all taxes arising out of any interest or other income derived from the gross settlement amount shall be paid from the gross settlement amount. Upon calculation of the individual payments, and at least three (3) calendar days after Final Approval (if not sooner), the Claims Administrator shall advise Defendant of the amount of the employer's share of payroll taxes. Defendant will provide that amount to the Claims Administrator within fourteen (14) calendar days after Final Approval.

69. Within ninety (90) calendar days of the Order Granting Preliminary Approval, Defendant will wire the Settlement Fund of five million and five hundred thousand dollars ($5,500,000) to fund the Settlement to the Administrator, which shall be deposited by the Settlement Administrator into a Qualified Settlement Fund pursuant to Internal Revenue Code §1.468B-1. These funds shall be under the exclusive control of the Administrator, and shall be used solely for the purpose of fulfilling the terms of the Agreement.

70. Within one (1) calendar day after: the Effective Date or the date of funding of the Settlement Fund as set forth in Paragraph 69, whichever is later, the Claims Administrator shall make payment to Class Counsel from the Settlement Fund of the Attorneys' Fees and Costs consisting of the total court-approved attorneys' fees, as well as the total court-approved litigation costs accrued as of the date of the Final Approval Hearing.

71. The Claims Administrator shall take all reasonable efforts to make payments from the Settlement Fund within fifteen (15) business days after the Effective Date. The Administrator will send individual checks by regular U.S. Mail to the address provided to the Claims Administrator for mailing of the Settlement Notice. Each Settlement Class Member who is entitled to a payment under this Settlement Agreement will receive a single check for the total of his or her settlement payment (less applicable payroll deductions required by federal and state law for the wage portion of the

payment, as described below).

72. Checks sent to Settlement Class Members under this Settlement Agreement shall remain valid and negotiable for 180 calendar days from the date of their mailing, and thereafter may be automatically canceled if not cashed by the payee within that time. The Claims Administrator will provide notice to Plaintiffs' Counsel of any uncashed checks and the Administrator shall have responsibility to attempt to locate the impacted Class Members and re-issue checks with an expiration date 180 days following the re-issuing of the checks. In the event any Settlement Class Member(s) cannot be located within 180 days of the expiration of the initial settlement checks, uncashed settlement check(s) will be awarded cy pres to UC Hastings' Workers' Rights Clinic. Defendant will not be responsible for the employer's share of taxes for any uncashed settlement checks and shall be returned the proportional amount of the employer's share of taxes from any uncashed settlement checks. No person shall have any claim against Defendant, Released Parties, Defense Counsel, the Named Plaintiffs, any member of the Settlement Class, Class Counsel, or the Claims Administrator based on distributions and payments made in accordance with this Settlement Agreement.

G. **Payroll Deductions, Union Dues, and Taxes**

73. For each Settlement Class Member who is entitled to payment under this Settlement Agreement, Defendant will issue: (a) a W-2 Form on which the wage portion of the settlement payment shall be reported and from which all required union dues and payroll deductions required by state and federal law shall be taken; and (b) a 1099 Form on which the penalties and interest of the settlement payment shall be reported and from which no deductions will be taken.

74. The Parties agree and understand that Defendant has not made any representations regarding the tax obligations or consequences, if any, related to this Settlement Agreement. The Parties agree that Defendant and each Settlement Class Member are solely responsible for determining the tax consequences of payments made pursuant to this Settlement Agreement and for paying taxes, if any, which are determined to be owed by each of them on such payments (including penalties and interest related thereto) by any taxing authority, whether state, local, or federal.

# VI.    OTHER PROVISIONS

## A.    Voiding the Settlement Agreement

75.    A failure of the Court to approve any material condition of this Settlement Agreement which effects a fundamental change of the terms of the settlement shall render the entire Settlement Agreement voidable and unenforceable as to Plaintiffs and Defendant, at the option of either Party. Each Party may exercise its option to void this Settlement Agreement as provided above by giving notice, in writing, to the other and to the Court at any time prior to final approval of this Settlement Agreement by the Court.

76.    If more than five percent (5%) of the Settlement Class submits timely and valid requests for exclusion pursuant to the terms and procedures of the Settlement Notice, this entire Settlement Agreement shall become voidable and unenforceable as to Plaintiffs and Defendant, at Defendant's sole discretion.  Defendant may exercise such option by giving notice, in writing, to Class Counsel and to the Court at any time prior to final approval of this Settlement Agreement by the Court.

## B.    Notices

77.    Except for Settlement Class Member notices, which are required herein to be made to or by the Claims Administrator, all notices, requests, demands and other communications related to or in connection with this Agreement shall be in writing, and shall be provided by appropriate method depending on the urgency (e.g., personal delivery, facsimile, overnight delivery, or first-class U.S. mail) to:

**TO THE SETTLING CLASS:**

Jay Smith
Joshua F. Young
GILBERT & SACKMAN
A Law Corporation
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

Randy Renick
Cornelia Dai
HADSELL STORMER & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Tel: (626) 585-9600
Fax: (626) 577-7079

**TO DEFENDANT:**

Catherine A. Conway
Tiffany Phan
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213-229-7000
Facsimile: 213-229-7520

C.      **Mutual and Full Cooperation**

78.     Plaintiffs, Defendant, Class Counsel, and Defense Counsel agree to fully cooperate with each other to accomplish the approval by the Court and of the terms of this Settlement Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms herein. The parties agree to use their best efforts, including all efforts contemplated by this Settlement Agreement, and any other efforts that may become necessary by Order of the Court, or otherwise, to effectuate this Settlement Agreement.

79.     The Parties agree that they will not attempt to encourage any members of the Settlement Class to object to the proposed settlement or to opt out. Plaintiffs and Class Counsel will make every reasonable effort to accurately explain the benefits of this Settlement Agreement in response to any questions from any member of the Settlement Class.

D.      **No Admission of Liability**

80.     Nothing herein shall constitute any admission by Defendant of wrongdoing or liability or of the truth of any factual allegations in the Class Action. Nothing herein shall constitute an admission by Defendant that the Class Action was properly brought as a class or representative action other than for settlement purposes. To the contrary, Defendant has denied and continue to deny each and every material factual, procedural, and/or legal allegation and alleged claim asserted in the Class Action. To this end, the settlement of the Action, the negotiation and execution of this Agreement,

and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant, or any of them, or of the truth of any of the factual allegations in the operative complaints, and are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Defendant, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

E. **Binding Nature of Settlement Agreement**

81.    This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties.  The Named Plaintiffs and the Settlement Class represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, or encumbered any claim, demand, action, cause of action, or rights released in the Claims Released in this Settlement Agreement.

82.    This Settlement Agreement may be amended or modified only by a written instrument signed by Class Counsel and the Named Plaintiffs, as well as Defense Counsel and Defendant.  No rights under this Settlement Agreement may be waived except in writing.

83.    This Settlement Agreement and any attached exhibits constitute the entire Settlement Agreement between the Named Plaintiffs, Settlement Class, and Defendant relating to the terms contained herein.  All prior or contemporaneous settlement agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a Party or its counsel, are merged herein.  No oral or written representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

84.    Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions.  Each term of this Settlement Agreement is intended to be contractual and not merely a recital.

F. **Dispute Resolution**

85.     Except as authorized herein, all disputes concerning the interpretation, implementation, calculation, or payment of the Settlement Amount or other disputes regarding compliance with this Settlement Agreement will be resolved by the Court.

G. **Restriction on Publicity**

86.     Class Counsel and Plaintiffs agree that they will not issue any press release or press statement, or initiate media coverage, regarding Defendant, the Released Parties, or this Settlement Agreement.

H. **Governing Law and Joint Drafting of Settlement Documents**

87.     All terms of this Settlement Agreement and related documents shall be governed by and interpreted according to the laws of the State of California, without respect to choice of law provisions of any state.

88.     Class Counsel and Defense Counsel have arrived at this Settlement Agreement as a result of a series of arm's-length negotiations, taking into account all relevant factors, present and potential.

89.     This Settlement Agreement has been drafted jointly by Class Counsel and Defense Counsel and, therefore, in any construction or interpretation of this Settlement Agreement, the same shall not be construed against any of the Parties.

90.     The Named Plaintiffs, Settlement Class, and Class Counsel agree that none of the documents provided to them by Defendant shall be used for any purpose other than the prosecution and settlement of the Class Action. Specifically, none of the documents provided shall be used to pursue any subsequent claims or litigation against Defendant or the Released Parties.

I. **Counterparts**

91.     This Agreement may be executed in one or more counterparts, which may be filed with the Court. All executed counterparts, and each of them, shall be deemed to be one and the same instrument. Once available, a complete set of executed counterparts shall be filed with the Court. All executed copies of this Agreement and photocopies thereof (including facsimile and/or emailed copies of the signature pages) shall have the same force and effect and shall be as legally binding and

enforceable as the original.

J.    **Execution of Settlement Agreement**

92.    This Settlement Agreement may be executed in one or more counterparts and by scanned copies or facsimile.  All executed copies of this Settlement Agreement and photocopies thereof shall have the same force and effect and shall be as legally binding and enforceable as the original.

K.    **Parties' Authority**

93.    The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and are fully authorized to bind the Named Plaintiffs, Settlement Class, and Defendant to all terms stated herein.

Dated: _____          **GIBSON, DUNN & CRUTCHER**

_____
Catherine A. Conway
Attorneys for Defendant Phillips 66 Company

Dated: _____          HADSELL STORMER & RENICK, LLP

_____
Randy Renick
Attorneys for Plaintiffs Kyndl Buzas, Raudel
Covarrubias, and Daniel Runions

Dated: _____          GILBERT & SACKMAN
A LAW CORPORATION

_____
Josh Young
Attorneys for Plaintiffs Kyndl Buzas, Raudel
Covarrubias, and Daniel Runions

Dated: _____     KYNDL BUZAS, PLAINTIFF

_____
Kyndl Buzas, Plaintiff

Dated: _____     RAUDEL COVARRUBIAS, PLAINTIFF

_____
Raudel Covarrubias, Plaintiff

Dated: _____     DANIEL RUNIONS, PLAINTIFF

_____
Daniel Runions, Plaintiff

Dated: _____     PHILLIPS 66 COMPANY

_____
Mark Evans, Manager, San Francisco Refinery
Phillips 66 Company, Defendant

Dated: _____     PHILLIPS 66 COMPANY

_____
Darin Fields, Manager Los Angeles Refinery
Phillips 66 Company, Defendant

1    enforceable as the original.

2    J.    **Execution of Settlement Agreement**

3          92.    This Settlement Agreement may be executed in one or more counterparts and by

4    scanned copies or facsimile.  All executed copies of this Settlement Agreement and photocopies

5    thereof shall have the same force and effect and shall be as legally binding and enforceable as the

6    original.

7    K.    **Parties' Authority**

8          93.    The signatories hereto represent that they are fully authorized to enter into this

9    Settlement Agreement and are fully authorized to bind the Named Plaintiffs, Settlement Class, and

10   Defendant to all terms stated herein.

12   Dated: Oct 26, 2017                     **GIBSON, DUNN & CRUTCHER**

14

15                                           Catherine A. Conway
                                             Attorneys for Defendant Phillips 66 Company

16   Dated: _____                  HADSELL STORMER & RENICK, LLP

17

18

19                                           Randy Renick

20                                           Attorneys for Plaintiffs Kyndl Buzas, Raudel
                                             Covarrubias, and Daniel Runions

21   Dated: _____                  GILBERT & SACKMAN

22                                           A LAW CORPORATION

23

24

25                                           Josh Young
                                             Attorneys for Plaintiffs Kyndl Buzas, Raudel

26                                           Covarrubias, and Daniel Runions

27

28

1 | enforceable as the original.

2 | J. **Execution of Settlement Agreement**

3 | 92. This Settlement Agreement may be executed in one or more counterparts and by

4 | scanned copies or facsimile. All executed copies of this Settlement Agreement and photocopies

5 | thereof shall have the same force and effect and shall be as legally binding and enforceable as the

6 | original.

7 | K. **Parties' Authority**

8 | 93. The signatories hereto represent that they are fully authorized to enter into this

9 | Settlement Agreement and are fully authorized to bind the Named Plaintiffs, Settlement Class, and

10 | Defendant to all terms stated herein.

Dated: _____        **GIBSON, DUNN & CRUTCHER**

_____
Catherine A. Conway
Attorneys for Defendant Phillips 66 Company

Dated: 10/26/17        HADSELL STORMER & RENICK, LLP

_____
Randy Renick
Attorneys for Plaintiffs Kyndl Buzas, Raudel
Covarrubias, and Daniel Runions

Dated: 10/26/2017        GILBERT & SACKMAN
A LAW CORPORATION

_____
Josh Young
Attorneys for Plaintiffs Kyndl Buzas, Raudel
Covarrubias, and Daniel Runions

Dated: _10/26/2017_     KYNDL BUZAS, PLAINTIFF

_Kyndl C. Buzas_
Kyndl Buzas, Plaintiff

Dated: _____     RAUDEL COVARRUBIAS, PLAINTIFF

_____
Raudel Covarrubias, Plaintiff

Dated: _____     DANIEL RUNIONS, PLAINTIFF

_____
Daniel Runions, Plaintiff

Dated: _____     PHILLIPS 66 COMPANY

_____
Mark Evans, Manager, San Francisco Refinery
Phillips 66 Company, Defendant

Dated: _____     PHILLIPS 66 COMPANY

_____
Darin Fields, Manager Los Angeles Refinery
Phillips 66 Company, Defendant

Dated: _____          KYNDL BUZAS, PLAINTIFF

                                _____
                                Kyndl Buzas, Plaintiff

Dated: _10·26·17_               RAUDEL COVARRUBIAS, PLAINTIFF

                                _____
                                Raudel Covarrubias, Plaintiff

Dated: _____          DANIEL RUNIONS, PLAINTIFF

                                _____
                                Daniel Runions, Plaintiff

Dated: _____          PHILLIPS 66 COMPANY

                                _____
                                Mark Evans, Manager, San Francisco Refinery
                                Phillips 66 Company, Defendant

Dated: _____          PHILLIPS 66 COMPANY

                                _____
                                Darin Fields, Manager Los Angeles Refinery
                                Phillips 66 Company, Defendant

Dated: _____        KYNDL BUZAS, PLAINTIFF

_____
Kyndl Buzas, Plaintiff

Dated: _____        RAUDEL COVARRUBIAS, PLAINTIFF

_____
Raudel Covarrubias, Plaintiff

Dated: *10-26-17*             DANIEL RUNIONS, PLAINTIFF

_____
Daniel Runions, Plaintiff

Dated: _____        PHILLIPS 66 COMPANY

_____
Mark Evans, Manager, San Francisco Refinery
Phillips 66 Company, Defendant

Dated: _____        PHILLIPS 66 COMPANY

_____
Darin Fields, Manager Los Angeles Refinery
Phillips 66 Company, Defendant

Dated: _____          KYNDL BUZAS, PLAINTIFF

                                _____
                                Kyndl Buzas, Plaintiff

Dated: _____          RAUDEL COVARRUBIAS, PLAINTIFF

                                _____
                                Raudel Covarrubias, Plaintiff

Dated: _____          DANIEL RUNIONS, PLAINTIFF

                                _____
                                Daniel Runions, Plaintiff

Dated: _____          PHILLIPS 66 COMPANY

                                _____
                                Mark Evans, Manager, San Francisco Refinery
                                Phillips 66 Company, Defendant

Dated: _____          PHILLIPS 66 COMPANY

                                _____
                                Darin Fields, Manager Los Angeles Refinery
                                Phillips 66 Company, Defendant

| 1 | Dated: _____ | KYNDL BUZAS, PLAINTIFF |
| 2 | | |
| 3 | | |
| 4 | | Kyndl Buzas, Plaintiff |
| 5 | Dated: _____ | RAUDEL COVARRUBIAS, PLAINTIFF |
| 6 | | |
| 7 | | |
| 8 | | Raudel Covarrubias, Plaintiff |
| 9 | Dated: _____ | DANIEL RUNIONS, PLAINTIFF |
| 10 | | |
| 11 | | |
| 12 | | Daniel Runions, Plaintiff |
| 13 | | |
| 14 | Dated: _____ | PHILLIPS 66 COMPANY |
| 15 | | |
| 16 | | Mark Evans, Manager, San Francisco Refinery |
| 17 | | Phillips 66 Company, Defendant |
| 18 | Dated: **10/26/2017** | PHILLIPS 66 COMPANY |
| 19 | | |
| 20 | | Darin Fields, Manager Los Angeles Refinery |
| 21 | | Phillips 66 Company, Defendant |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |